HENRY R. BRINGHURST and ELIZABETH A. BRINGHURST,

*vs.*

FRANK P. O'DONNELL and JOHN A. JOYCE and WILLIAM J. KERRIGAN, trading as Joyce and Kerrigan.

*New Castle, May* 14, 1924.

Court is reluctant to disturb rulings deliberately made by same court at earlier period on points going to property rights.

Assuming that common-law doctrine of ancient lights still prevails in Delaware, injunction will issue to protect right only when privation of light and air by proposed erections will render occupation of dwelling house uncomfortable, or exercise of business materially less beneficial.

Injunction against erection of wall will not issue to prevent darkening of windows, in absence of showing of what other windows there are in complainant's building, to what extent exercise of their business would be damaged, or what would be conditions of light generally.

Property owners, in whose favor use of alley along adjoining lot was reserved for carrying off surface water, *held* entitled to preliminary injunction against extension of building on such lot, so as to destroy alley and prevent drainage of water from roof of complainants' building; "surface water" embracing waters derived from falling rains and melting snows, whether on ground or roofs of buildings thereon.

INJUNCTION BILL to restrain the erection of a wall. The complainants and the defendant O'Donnell are owners of adjoining lots of land located on Market Street near Fourth Street in the City of Wilmington. For upwards of sixty years a brick building has been standing on the lands of the complainants, the southerly wall of which is immediately adjacent to the northerly line of O'Donnell's lot. For the same period certain windows, alleged by the complainants to constitute ancient lights and to be necessary for the reasonable and proper use of said building, have been located in this wall. There is a building on the lot of O'Donnell immediately adjoining the southerly wall of the complainants' building, but not extending the full length thereof.

There are two alleys running along the O'Donnell property—one opening into Market Street on the southerly side of the premises and running back to the rear thereof, and the other connecting at right angles with the first one and running in the rear thereof up to the southerly wall of the complainant's property, where it ends. The latter alley is therefore a so-called blind alley. It is two feet in width.

The title by which O'Donnell holds his property is subject to the following reservation in favor of the complainants as owners of the property held by them:

"Reserving, however, * * * the use forever of a two foot alley leading along the western and southern lines of this lot into Market Street (being the alley above described as two) for the purpose of carrying off the surface water and cleaning the cesspools on said lots and for no other purpose whatever."

The earliest date at which this reservation appears in O'Donnell's chain of title so far as now appears is January 7, 1857. At that date the land now owned by the complainants was entirely covered by buildings. These buildings, the affidavits show, are the same now as they were then.

The bill charges and the answer admits that the defendant O'Donnell and the defendants Joyce and Kerrigan as contractors propose and intend to make certain alterations in O'Donnell's building by extending the same at the rear in such way as to absolutely obliterate and destroy the said alley now running in the rear thereof and thereby deprive the complainants of the benefits of the reservation regarding the alley made in their behalf, and likewise to interrupt and destroy some or all of the alleged ancient lights and windows above referred to.

The prayer is for an injunction restraining the defendants from thus destroying the alley and interrupting the lights.

The present application is for a preliminary injunction. It was heard on bill, answer and affidavits.

*William S. Hilles*, for the complainants.

*Herbert H. Ward*, of the firm of Ward, Gray and Neary, for the defendants.

The Chancellor. First. As to that branch of the case which concerns the ancient lights, there can be no doubt concerning what the answer ought to be at the present stage of the litigation. In *Clawson v. Primrose*, 4 *Del. Ch.* 643, Chancellor Bates, in an opinion which reveals those qualities of studious learning, lucidity of reason and clearness of expression for which he is so justly famed, held that the doctrine of ancient lights as he understood it to prevail at common law prior to our separation from England was transplanted to these shores, and this being so was, by virtue of the provisions of the Constitution of 1776, continued as the law of this State upon its organization as a commonwealth.

Chancellor Saulsbury in a vigorous opinion questioned the correctness of the decision of his predecessor in *Clawson v. Primrose*, but expressly refrained from either affirming or overruling that case. *Hulley v. Security Trust & Safe Deposit Co.*, 5 *Del. Ch.* 578. In the later case of *Haitsch v. Duffy*, before Chancellor Curtis (10 *Del. Ch.* 280, 92 *Atl.* 249) the doctrine of ancient lights again came under consideration. But though the Chancellor said in the course of his opinion that he did not feel at liberty to disregard or overrule *Clawson v. Primrose*, or to refuse to give the

complainant relief based on it, yet in view of the facts involved in the case before him and the signifiance allowed them in turning the case upon another point, it can hardly be said that *Clawson v. Primrose* has been expressly reaffirmed by the *Haitsch v. Duffy Case*. While doubt has been thrown upon the ruling made by Chancellor Bates, it has never been rejected in this State. In other jurisdictions, however, it has been refused recognition as correctly expounding the law in America. Where legislatures have not destroyed the doctrine of *Clawson v. Primrose* by statute, courts have done so by judicial pronouncements. So that to-day, I think it is correct to say that Delaware is the only jurisdiction where the so-called doctrine of ancient lights is accepted as a constituent part of its law of property rights. There is, of course, a great reluctance on the part of any court to disturb, much less to overthrow, the rulings deliberately made by the same court at an earlier period in its history upon points that go to rights of property. I am, by reason of a feature of the case about to be mentioned, spared the unpleasant duty of having to debate whether I should accept or not the matured conclusion of so eminent a judge as Chancellor Bates.

The feature of the case to which reference was just made, arises out of a principle of law which *Clawson v. Primrose* expressly recognized. That principle is that even where the doctrine of ancient lights prevails, yet an injunction will issue to protect the right "only when the privation of light and air by a proposed erection will be in such degree as to render the occupation of the complainant's house uncomfortable, if it be a dwelling house, or if it be a place of business, the privation must render the exercise of the business materially less beneficial than it had formerly been." 4 *Del. Ch.* 649. The damage must be substantial. *Id.* 650. This principle supplied the decisional point on which *Hulley v. Security Trust & Safe Deposit Co., supra,* turned. That case arose on an application for a preliminary injunction, as does this one, and the Chancellor found as a fact from the affidavits filed that a case of substantial injury had not been made out with certainty. He therefore denied the injunction. In the instant case, while the bill alleges that the closing of the windows will result in great detriment and injury to the complainants, the answer avers to the

contrary, at least to the extent that the suggested detriment and injury will be such as legally or equitably entitles the complainants to relief. On the question of extent of injury, therefore, there is an issue of fact. And the evidence before me is silent on that issue. The complainants' building is used for business purposes, being located in a very busy portion of the City of Wilmington. What, if any, other windows are located in their buildings, to what extent the exercise of business would be damaged by a darkening of the windows in question, or what would be the conditions of light generally in case the intended obstruction is erected, the affidavits fail to show. This being the state of the matter, the injunction ought not issue on any theory that has to do with the matter of lights. It is therefore unnecessary at this stage of the case for me to either affirm or disapprove *Clawson v. Primrose* in its principal rule. If this litigation proceeds, the evidence may be such as to require a possible approval or disapproval of that case.

Second. While a preliminary injunction will not issue on the ground first presented, it must issue on the one now about to be considered. The complainants are entitled to be protected in the enjoyment of the right reserved to them to use the alley to the extent they are now seeking. The reservation of the use is "for the purpose of carrying off the surface water and cleaning the cesspools on said lots and for no other purpose."

I understand the complainants to make no contention with respect to the cleaning of cesspools. The only right with which they now concern themselves is the right to use the alley for carrying off the surface water. It will not be necessary to indulge in extended discussion with respect to this because the argument has narrowed itself principally to the question of whether water falling on the roof of the complainants' building is suface water within the meaning of the reservation. It seems to be the contention of the defendants that surface water is only such water as touches the surface of the ground; that inasmuch as the entire surface of the complainants' lot has been covered by buildings for at least twenty years and because of the thriving business section in which it is located, will always be covered by buildings, no water can or ever will collect upon the ground; that therefore the use of the alley for carrying off surface water has ceased; and that the use ceasing

the rights of the complainants have thereby terminated. The principle of law which is cited as sustaining the conclusion of this syllogism is quoted as follows:

"When the purpose, reason and necessity for an easement cease, within the intent for which it was granted the easement is extinguished. Hence, if an easement is not granted for all purposes, but for a particular use only, the right continues while the dominant tenement is used for that purpose, and ceases when the specified user ceases. A way created by necessity cannot endure longer than the cause which calls it into being, and is consequently extinguished on the acquisition of another mode of passage, although far less convenient." 9 *Ruling Case Law*, *p.* 815, § 71.

"Although a contrary conclusion has been reached, it generally has been held that if an easement is granted for a particular purpose, the right terminates as soon as the purpose for which it was granted ceases to exist. So if the purpose is abandoned, or its accomplishment is rendered impossible, the right is extinguished." 19 *Corpus Juris*, *p.* 954, § 172.

The answer to this argument is that the main premise from which it starts is that "surface water" is such water as reaches the ground or dirt, and that this premise is untenable. Under the appropriate title in Words and Phrases (original edition as well as the Second Series) will be found numerous references to adjudicated cases from which it will appear that the phrase "surface water" embraces waters derived from falling rains and melting snows. No case has been cited which holds that in order to become surface water the rains must fall, or the snow must melt upon the soil of the earth. In the case of a building erected on land, the roof is to be regarded as an artificial elevation of the earth's surface. When it intercepts the falling rain or snow, it therefore gathers surface waters. That such must have been the understanding of the parties in wording the reservation in question would appear to be evident not alone from the ordinary sense which common usage attributes to the words, but as well from the fact that when the reservation was made (January 7, 1857) the entire lot of the complainants was covered with its present buildings. The complainants' evidence shows this to be true, and the defendants' evidence though not so full shows the land to have been entirely covered with buildings for over twenty years. Unless, therefore, "surface water" was meant to include water falling on the roof, it is difficult to understand what the parties meant in

inserting the reservation in O'Donnell's title deeds. For a great many years the water from the roof of the complainants' building was carried by a gutter and dumped into the alley. Just how long it has been since it ceased to be so carried off, is not clear. A recent photograph taken on April 21, 1924, shows a portion of the old gutter hanging down out of place on the southerly wall of complainants' building. At present, water from this roof drips for the most part upon the neighboring roof of O'Donnell's building, and as I gather from the testimony goes from thence into the alley. Until five years ago according to one witness, according to other witnesses until ten years ago, and according to the defendant O'Donnell not for very many years past, the water has been collected by a gutter and dumped from the complainants' property into the alley.

The complainants contend that mere non-user of an easement granted by deed for a period however long will not amount to an abandonment. In 19 *Cyc. p.* 942, appears the following:

"It is said in some cases that mere non-user, unless for the prescriptive period, will raise no presumption of abandonment. In other cases it is either held or said without qualification as to the method by which the easement was acquired that non-user for a period sufficient to create an easement by prescription will raise a presumption to defeat the right; but that this non-user is open to explanation and may be controlled by proof that the owner had no intention to abandon his easement while thus omitting to use it."

It is unnecessary to pursue the question of abandonment further. For under the facts thus far appearing no showing is made of any abandonment, if there ever was any, for such a length of time as would warrant the conclusion that the right was surrendered.

A preliminary injunction will issue as prayed in the bill to the extent of restraining the defendants from interfering with the right of the complainants to enjoy the privilege reserved for their benefit to use the alley in question for carrying off the surface water.

Let an order be prepared accordingly.