The injunctive relief sought in this case is based on the relative rights of two adjoining landowners regarding surface waters. That subject has received much discussion in our courts as well as in the courts of other states and other lands, and the decisions are divided into two distinct and contrary classes, dependent upon whether they follow the civil or the common law. In New Jersey we have adopted the "Common Enemy" principle of the common law, with certain exceptions hereinafter noted.Lulevitch v. Roberts, 98 N.J. Eq. 373.
The case is before me on final hearing, which developed the following facts: *Page 391 
The complainant owns premises located on the southeast corner of Broadway and Third avenue, in the city of Long Branch, having a frontage on Broadway of approximately forty feet and a depth on Third avenue of about one hundred and twenty feet, and running back to an alley. A two-story brick building containing stores and offices covers almost the entire land; the only unoccupied portions being a small rectangular section on the southeast corner of the tract, having a width of six feet and a depth of thirty feet, and a six and one-half inch strip seventeen feet long, extending along the easterly line of the complainant's building, north of the rectangular section.
The defendant owns the premises on Broadway immediately east of the complainant's property, having a frontage on Broadway of about seventy feet and extending back to the same alley. On the defendant's land there is a two-story brick and concrete building which occupies only the front portion, giving the defendant a rear yard which is about forty-five feet in depth on the west side and about fifty feet in depth on the east side.
The defendant's building is in two sections, the front part being one story higher than the rear. It is alleged in the bill of complaint that both of the roofs slant southerly toward the rear of the defendant's property; that the surface water from the roof of the front building is drained by open gutters and leaders to the lower roof, and from there by open gutters and leaders to the yard. It is alleged further that the surface water then accumulates in the defendant's yard which is covered by concrete and cinders, and that, because the concrete portion of the yard slopes toward the easterly wall of the complainant's building the water flows against the complainant's building and into the cellar, causing the foundation walls to be undermined, beams and floors to be unlevelled, interior trim and floors disjointed, doors unbalanced and interior plaster walls and ceiling cracked and loosened.
The complainant says that her building was erected about eighteen years ago and that it was in good condition until the defendant laid the concrete in his back yard. She says *Page 392 
that her tenants threaten to vacate and that she is suffering permanent and irreparable injury.
The bill seeks an injunction to restrain the defendant from permitting the surface water to drain against the complainant's building, and a mandatory injunction requiring him to provide drainage. The complainant also asks for damages and for costs of repairing her property.
Until a short time ago the public alley, which abuts both properties, was lower than the land of the defendant, so that surface water flowed upon it from the defendant's property, and then down to Third avenue. During the past few years cinders have been spread in the alley, raising its level above that of the defendant's land, but leaving it, as before, lower than the land adjoining the alley on the south, with the result that the water now runs across the alley from the south and over the premises of the defendant. It is not charged nor proved that the defendant had anything to do with dumping the cinders in the alley.
In addition to the flow of surface water from the direction of the alley and the water which comes down from the roof of the defendant's building, there is an accumulation in the defendant's rear yard of rain water which strikes the westerly wall of the Kaplan building adjoining on the east, and of rain which beats against the easterly wall of the complainant's property; making four sources, each from a different direction.
There is no doubt that during the past two years the complainant's cellar became flooded after heavy rains and after the thawing of ice and snow; but it has not been established that such flooding was caused by any unusual accumulation of water on the defendant's property nor by any wrongful act of the defendant In fact, it is inferable from the evidence that the water in the complainant's cellar comes from other sources and directions.
Surface waters are those which fall on the land from the skies or arise in springs, and following no defined course or channel are lost by being diffused over the ground through percolation, evaporation or natural drainage. They embrace *Page 393 
waters derived from falling rain and melting snow, whether on the ground or on the roofs of buildings thereon. Bringhurst v.O'Donnell, 14 Del. Ch. 225; 124 Atl. Rep. 795; Uhl v. OhioRiver Co., 56 W. Va. 494; 49 S.E. Rep. 378; Price v. OregonRailroad Co., 47 Or. 350; 83 Pac. Rep. 843.
Under the common law, as accepted by our courts, surface water is a common enemy which every proprietor may fight and get rid of as best he may, and "neither the retention, diversion, repulsion or altered transmission of surface water is an actionable injury, even though damage ensues." Bowlsby v. Speer, 31 N.J. Law 351;Jessup v. Bamford Brothers Silk Manufacturing Co.,66 N.J. Law 641; Kaufman v. Bergen Turnpike Co., 71 N.J. Law 33;Fitz-Patrick v. Gourley, 104 N.J. Eq. 281.
An exception to this rule (not applicable to this controversy), is that a landowner has no right to alter, by artificial means, the natural discharge of surface water from his land on that of his neighbor, by conducting it in new channels in unusual quantities to or on a particular part or parts of the latter's land, to its injury. Field v. West Orange, 36 N.J. Eq. 118;affirmed, 37 N.J. Eq. 600; Kelly v. Dunning, 39 N.J. Eq. 482;Cassini v. City of Orange, 107 N.J. Eq. 128.
The cases in our courts prior to 1901 were reviewed by Mr. Justice Gummere in Jessup v. Bamford Brothers SilkManufacturing Co., supra, and quoting from Gannon v.Hargadon, 10 Allen, 106, which he said was perhaps the leading case upon the subject of the diversion of surface water, that learned jurist said (at pages 644-645):
"* * * The right of an owner of land to occupy and improve it in such manner and for such purposes as he may see fit, eitherby changing the surface or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated, with reference to that of adjoining owners, that an alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface, or flowing on to it from the surface *Page 394 
of adjacent lots, either to stand in unusual quantities on other adjacent lots or to pass into or over the same in greater quantities or in other directions than they were accustomed to flow; * * * that the right of a party to the free and unfettered control of his own land cannot be interfered with or restrained by any consideration of injury to others which may be occasioned by the flow of mere surface water, in consequence of the lawful appropriation of land by its owner to a particular use or mode of enjoyment. Nor is it at all material, in the application of this principle of law, whether a party obstructs or changes the direction and flow of surface water by preventing it from coming within the limits of his land, or by erecting barriers, or changing the level of the soil, so as to turn it off in a new course after it has come within his boundaries. The obstruction of surface water, or an alteration in the flow of it, affords no cause of action in behalf of a person who may suffer loss or detriment therefrom against one who does no act inconsistent with the due exercise of dominion over his own soil.'"
Our court of errors and appeals in Lulevitch v. Roberts,supra, said that the law of surface water is largely arbitrary and free from decisive principles and that it does not seem to be established in this state. However, the court said that we have adopted Chief-Justice Beasley's declaration of the common enemy doctrine, "at any rate so far as it applies to the turning back of water by the lower proprietor, or to * * * diversion, resulting in personal injury."
In the case of Lightcap v. Lehigh Valley Railroad Co.,90 N.J. Law 620, the defendant filled in his tract of land to such an extent as to work a change in the topography, and to cause the surface water to run in a southerly instead of an easterly course. The court of errors and appeals approved the opinion of Chief-Justice Gummere in Jessup v. Bamford Brothers SilkManufacturing Co., supra, and applied the doctrine that "the obstruction of surface water, or an alteration in the flow of it, affords no cause of action in behalf of a person who may suffer loss or detriment therefrom against one who does no act inconsistent with the due exercise of dominion over his soil." *Page 395 
As above stated, it has not been satisfactorily proved that the water which finds its way into the complainant's cellar comes from the defendant's yard. But even if that were so a right of action would not necessarily follow, because the only act of the defendant which might cause the water to be diverted to the complainant's property was the raising of the grade of his land by the addition of cinders. The seepage into the complainant's cellar could not be attributable to the fact that the defendant covered his yard with concrete, because that was done about ten years ago and there was no flooding of the complainant's cellar until the past year. The spreading of the cinders is not causing an unusual accumulation of water to flow against any particular part of the complainant's property.
The most that can be said in the complainant's favor is that the defendant has changed the general flow of surface water from a southerly direction to a westerly direction by changing the grade of his land, although I do not think the facts warrant that conclusion; but even so, the law sanctions such an act.
A case in point is that of Sullivan v. Browning, 67 N.J. Eq. 391,
in which a bill was filed for an injunction to restrain the defendants from diverting surface water over the land of the complainant. The injury complained of was the construction by the defendants on their land of "bunkers" which are described as artificially constructed mounds of earth raised above the elevation of the surrounding land at a sufficient height to divert the flow of surface water. Vice-Chancellor Stevenson pointed out that no claim was made that the defendants were using their land as a reservoir to collect a large quantity of surface water which they subsequently discharged in a body or in unreasonable amounts upon the land of the complainant, and sustained the demurrer to the bill. See, also, Weisberger v.Maurer, 9 N.J. Mis. R. 117; 153 Atl. Rep. 626; affirmed,109 N.J. Law 273.
The complainant has done nothing to remedy the conditions of which she complains. The foundation of her building is not water-proofed (Fitz-Patrick v. Gourley, supra), *Page 396 
and in an answer to an interrogatory served upon her by the defendant she said that since her ownership of the property she has made no repairs to the easterly wall of her building, and that she has no knowledge that it was ever repaired since its erection in 1916.
The testimony of building and engineering experts shows that the complainant can do several things to avert the seepage of water into the cellar of her building. She can waterproof the foundation; she can have the cinders removed from the public alley which will lower the grade of the alley and permit the water to flow thereon from the defendant's property; she may arrange for an extension of the ditch which now exists in a portion of the alley, or she may be able to erect some kind of a wall against the easterly side of her building which will repel the water coming from the defendant's property.
She has a right to protect her property from the ravages of surface water, and cannot look to the defendant for help or damages in the absence of any showing that he is defending himself against the common enemy by an unlawful method. The bill will be dismissed.