Van Voorhis, J.
This action involves damage by surface water flowing from one lot upon an adjoining lot. Both of these parcels of land are on a slope on the southeast side of Wolf’s Lane, in the village of Pelham in Westchester County. The defendants’ parcel is at the higher elevation. The sidewalk in front of both premises slopes downward to the next intersecting street. The maximum difference in elevation between defendants’ and plaintiff’s lots was about 6 feet at the rear and along the street about 2% feet.
*586 The defendants’ lot (at the higher elevation) had been unimproved land until soon before the commencement of the present dispute. Plaintiff’s parcel had been earlier put to use. A store was built there in 1940, enlarged in 1945, which covers the entire width of plaintiff’s lot and extends back from the street between 60 or 70 feet.
On December 27-29,1948 and January 4—6,1949, water coming from defendants’ lot seeped through the upper wall of plaintiff’s building, damaging personal property in the basement for which he sues. Plaintiff testified that this did not happen while the defendants’ land was in its natural state, but that when this seepage occurred it was being improved for a gasoline service station. Building a gas station involved the erection of a garage building and covering the lot area with black top for automobiles to drive upon while using the service station. Plaintiff testified that at the time of this damage the portion of defendants ’ lot had been paved which adjoined the side of plaintiff’s store. The level of the upper lot was raised one foot where it adjoins plaintiff’s lot in making this improvement.
The complaint has been dismissed on the basis that defendants had the right to make reasonable improvements to this parcel of land including incidental changes in grade, even though the effect was to increase and accelerate the flow of surface water upon plaintiff’s land. The plaintiff admitted in his testimony that no leader pipes nor drains or ditches had been constructed which were responsible for the water going on his property. It is undisputed that the water which passed from defendants’ lot to plaintiff’s parcel was diffused surface water.
It is assumed that there was a causal relationship between the paving of the surface of defendants ’ lot and the seepage of water through plaintiff’s cellar wall on these dates. In affirming the dismissal of the complaint by the trial court on the law at the close of the evidence, the Appellate Division said: “ In an action by a lower lot owner to recover damages because of seepage of surface water which flowed from the property of the higher lot owner, the appeal is from a judgment entered on the dismissal of the complaint at the close of the case. Judgment affirmed, with costs. (Bennett v. Cupina, 253 N. Y. 436.) Wenzel, Beldock, Ughetta and Kleinfeld, JJ., concur; Nolan, P. J., dissents and votes to reverse the judgment and to grant a new trial, with the following memorandum: The evidence was sufficient to *587 present a question of fact as to whether or not the natural flow of the surface water from the higher ground adjacent to appellant’s property had been diverted by grading and paving and by the erection of structures thereon to appellant’s damage. (Cf. Jutte v. Hughes, 67 N. Y. 267; Tremblay v. Harmony Mills, 171 N. Y. 598.) Bennett v. Cupina (253 N. Y. 436) involved the right of a lower owner to divert from his land surface water flowing from the higher ground by filling and grading his land for the purpose of improving his property.” (3 A D 2d 712.)
The Trial Justice and the majority of the Appellate Division were, in our view, correct. The question of law is presented by Presiding Justice Nolan, in the distinction which he makes in regard to surface water between the rights of a lower and upper owner to improve his land.* He concludes that the lower owner may improve his land and change its grade although it throAvs back surface water on the land of the upper OAvner, but that the upper owner is to be denied a similar right. Such a conclusion we deem to be an error, which appears to have arisen in the following manner:
It has never been disputed that while one leaves his land in its natural condition, he is not required to adopt measures to prevent the flowage of surface water from his land to that of his neighbor (Vanderwiele v. Taylor, 65 N. Y. 341, 345). The next important decision on the subject is Barkley v. Wilcox (86 N. Y. 140). The natural formation of the land in that case was such that surface water from rain or melting snows would run off from the higher land through a natural depression across defendant’s lot and other lowlands to a river. The controversy arose when the defendant Wilcox built a house on the lower lot, filled in the lot and graded up the sidewalk in front of it so as to cut off this flow of surface water causing it to accumulate and *588 back up on the plaintiff’s higher premises where it seeped into the plaintiff’s cellar. The point in the Barkley case was that if the civil-law doctrine applied, the upper proprietor would have acquired an easement for the flowage of the water from his land over the defendant’s land which the defendant could not have disturbed by building operations. Upon the other hand, under the common-law doctrine adopted by Barkley v. Wilcox in New York State, the upper owner has no such easement, with the consequence that the lower owner was held to possess the right to improve his property by change of grade and the erection of a house, and with impunity to cause the water as part of his building operations to back up on the property of the upper owner even though it flooded the upper owner’s cellar. Resulting damages were held to be damnum absque injuria.
The discussion in Barkley v. Wilcox of the rights and liabilities of upper and lower owners did not signify that only the lower owner has the right to improve his land. The distinction between them exists only under the civil law, which favors the upper owner. Upper and lower owners were discussed in Barkley only to reject the civil-law rule, under which the upper owner had an easement for the flowage of surface water over the land of the lower proprietor. Under the common law adopted in this State, either proprietor can improve his land according to his own desire in any manner to which the land is suited, without being liable to the abutting owner for change in the flowage of the surface water provided that he does not resort to drains, pipes or ditches. Under the civil law the lower owner could not dam up the surface water and flood the land of the upper proprietor; under the common law he can do so. There is little discussion in Barkley v. Wilcox in respect to what the upper owner may do to his property, inasmuch as his rights to improve his land were not questioned in that case under either the civil law or the common law. The question was whether the lower owner could throw back the water by raising his grade, which he could not have done if the civil law applied. The conclusion was reached that upper and lower owner each has the right to improve his property, and that the lower owner is not to be discriminated against in this regard in favor of the upper. It was not the thought in adopting the common-law rule, that the lower owner could back up the surface water in improving his property so as to flood the cellar of the upper owne** without there being a *589 corresponding immunity from liability on the part of the upper owner, if such a result occurred tc the lower owner from the improvement of the land of the upper owner. This is made explicit by the dictum in the opinion by Denio, Ch. J., in Goodale v. Tuttle (29 N. Y. 459, 467) which is adopted in Judge Charles Andrews’ opinion in Barkley v. Wilcox (supra, p. 144) as the basis for the Barkley decision, viz.: “ And in respect to the running off of surface water caused by rain or snow, I know of no principle which will prevent the owner of land from filling up the wet and marshy places on his own soil for its amelioration and his own advantage, because his neighbor’s land is so situated, as to be incommoded by it. Such a doctrine would militate against the well-settled rule that the owner of land has full dominion over the whole space above and below the surface.” Judge Andrews’ opinion continues (p. 144): “ The case in which these observations were made, did not call for the decision of the question, but they show the opinion of a great judge, upon the point now in judgment. Similar views have been expressed in subsequent cases in this court, although in none of them, it seems, was the question before the court for decision. (Vanderwiele v. Taylor, 65 N. Y. 341; Lynch v. The Mayor, 76 id. 60.) ” The effect, then, of adopting the common-law rule in New York was to avoid discrimination against the lower proprietor, not to discriminate, as Presiding Justice Nolan’s memorandum implies, in favor of the lower owner against the upper owner. Here plaintiff (the lower owner) improved his lot first, but by doing so he has acquired no easement against the upper lot giving him the right to insist that the upper owner shall keep his land in its natural state, so that the surface water may percolate into the ground without flowing upon plaintiff’s land as it would be more likely to do after being improved. That would have resulted in an inversion of the civil-law rule, creating a dominant tenement in the lower proprietor and a servient estate in the upper. It would conform to neither the civil law nor to the-common law. Under the civil law the upper holds the dominant estate and the servient estate is in the lower proprietor. Under the common law neither holds a dominant or servient estate with respect to the other. Both have equal rights to improve their properties, come what may to the surface water, provided, of course, that the improvements are made in good faith to fit the property to some rational use to which it is *590 adapted, and that the water is not drained into the other property by means of pipes or ditches. Where, as here, it is diffused surface water, neither party is prevented from improving his parcel of land regardless of what becomes of the surface water. (Farnham on Waters and Water Rights, Vol. 2, § 187, Vol. 3, § 890; Gould on The Law of Waters, § 267).
The facts in Bennett v. Cupina (253 N. Y. 436), followed by the majority of the Appellate Division, are similar to those in Barkley v. Wilcox (supra) which with Goodale v. Tuttle (supra) is cited as authority for the proposition that there is no liability for the resulting damage. To similar effect are Howard v. City of Buffalo (211 N. Y. 241, 258); Fox v. City of New Rochelle (240 N. Y. 109,112); Cashin v. City of New Rochelle (256 N. Y. 190); Carrabis v. Brooklyn Ash Removal Co. (249 App. Div. 746-747), and Tench v. Highfield Estates (2 A D 2d 991).
No question of fact is presented concerning whether defendants made this improvement in good faith. Both parcels of land are in commercial zones, one is a store and the other is a gas station. There is no suggestion that defendant Grant made a long-term lease with the Texas Company merely as a vindictive gesture against the plaintiff, or that the Texas Company in adapting the lot to its business did anything different from what is done in case of any other gas station. All necessary permits were secured from the public authorities. The area is built up for business uses, and the fact that plaintiff’s lot was first improved did not give plaintiff a prescriptive right to have the adjoining lot remain fallow. These were usual improvements for a gas station, and plaintiff admits that there are no leaders, pipes or ditches.
The judgment appealed from is affirmed, with costs.
Chief Judge Conway and Judges Desmond, Dye, Fuld, Froessel and Burke concur.
Judgment affirmed.

 The first ease cited in the dissenting memorandum related to a situation where a defendant eonductéd water from the roofs of several houses and from his yard in drains to privies, causing them to overflow, casting the filth on plaintiff’s property (Jutte v. Hughes, 67 N. Y. 267), and the second involved a leader from the roof of a building constructed so as to discharge water on the sidewalk whereby ice was accumulated and the walk rendered dangerous (Tremblay v. Harmony Mills, 171 N. Y. 598). The issues in these cited cases did not require some of the broad generalities in their opinions. The ease of Mairs v. Manhattan Real Estate Assn. (89 N. Y. 498), cited in appellant’s brief, involved a wrongful excavation in a street by a private party which diverted into plaintiff’s vault the water flowing in the gutter in the street. The case turned on unlawful interference with the street.