OPINION OF THE COURT
Joseph Goldstein, J.
As we approach the commencement of a new decade, the concerns of the public regarding the production, transportation and utilization of energy and their effect on our environment, have, as a result of an ever-increasing awareness, reached a new pitch and fervor.
This concern for the environment has been amply demonstrated by the creation of both public, municipal and private groups, agencies, and authorities, all of whom in one way or another attempt to control the use of land and natural resources to its optimum for the benefit of the entire community.
And in some small way this case involves very much the same concern. It should be noted that this litigation arises in that portion of our judicial system designated at its very inception to provide to every member of our community a simple and uncomplicated device for arriving at a resolution of disputes between the parties: the Small Claims Part of our District Court. It is a lawsuit which seeks to determine the rights and liabilities of two neighboring land owners. The defendant, Long Island Lighting Co. (LILCO), a municipally regulated power monopoly exercises dominion over a particular parcel of land by virtue of an easement granted to it for the purpose of erection and maintenance of electric power lines.
The plaintiff in this action claims that he has resided at his current address for the past 20 years, the first 18 of which were without incident in regard to the damages about to be described; that during the months prior to the winter of 1977-1978 defendant performed certain land levelling and clearing and erected posts and power lines at 500 foot intervals along its right of way; that during the winter of 1977-1978 plaintiff *918 sustained some water damage to his driveway and complained thereof to the defendant. In fact, plaintiff brought a small claims action for the damage which at that time was assessed by the court at $250 for which plaintiff received judgment against the defendant (Grosso v Long Is. Light. Co., Index No. SC 858/78).
Having thus been put on notice, the defendant herein apparently did nothing more until after the winter season of 1978-1979, during which plaintiff, and apparently others, though they are not before the court at this time, sustained substantial damage caused by flooding during a particular period of that winter. A portion of plaintiff’s driveway was "washed away”. Plaintiff’s photographs of the "running waters” indicated a stream in flood stage.
Plaintiff now sues defendant for the maximum permitted in an action in the Small Claims Part, to wit, $1,000.
The question which this court must initially resolve, however, is one of responsibility. On trial, the plaintiff, appearing without counsel, testified that during the months pior to the 1977-1978 winter season, the Long Island Lighting Company performed certain work along its right of way, and, to quote the plaintiff, "brought in large landmoving equipment and raped the land.”
Plaintiff goes on in substance to testify that LILCO’s efforts along the length of the easement brought about a clearing of the land of all, or a major portion, of the natural growth and vegetation, and in particular the destruction, removal or breach of what plaintiff refers to as a "natural berm.” Plaintiff describes this "natural berm” as being a rise or hillock of land which tended to run along the length of the defendant’s right of way for several hundred feet, and which prior to its removal or breach served as a natural barrier, turning the flow of surface waters away from plaintiff’s property, and that of other property owners who were "downhill” from where the easement existed.
Plaintiff alleges that it was the removal of the growth and vegetation and the destruction, removal or breach of this "berm” which brought about the flooding process which caused him to sustain the damages as heretofore described.
By way of defense, LILCO, by its engineers who acknowledge the work performed, and by use of an independent surveyor familiar with the area, testified that this whole area was long known as an area particularly sensitive to the flow of *919 surface water, that abutting roadways were often flooded, particularly in the wintertime, and that the Town of Huntington had on more than one occasion been required to create a drainage basin or "sump” for the collection of these flowing surface waters. It was testified that on occasion it was necessary to pump water from the flooded roads in the area in order to make passage more safe for vehicles utilizing the highways.
It was clear that LILCO’s engineers knew, or with due diligence should have known, of the propensity of this area to be subjected to severe winter flooding. The witness offered as an expert by LILCO testified that this was a problem of long standing, in fact a situation which was an inheritance from the ice age as the glaciers withdrew from the Long Island area and one of which the various locales and owners of property in the community were aware.
It was not denied that plaintiff had lived safe and secure on his property for 18 years prior to the construction heretofore referred to without any water damage whatsoever. The plaintiff alleges that the defendant, either by acts of omission in the planning of this project, or by commission implicit by the removing or breaching the earthen "berm” or "hillocks” and altering, levelling or removing the ground cover so changed the contour and "holding or absorption quality” of the land along the easement as to negligently cause the flooding and concomitant damage to plaintiff’s property.
By way of defense, it is urged that the common-law rule, as adopted by this State, provides that neither the upper owner nor lower owner holds a dominant estate with respect to the other. Both have equal rights to improve their property, come what may, to the surface water, provided, of course, that the improvements are made in good faith to fit the property to some rational use to which it is adapted, and that the water is not drained onto the property by means of pipes or ditches. (Kossoff v Rathgeb-Walsh, Inc., 3 NY2d 583.) The claim asserted herein raises a legal question as to the right of a landowner to cast off surface water onto the property of his neighbor, and the inquiry must include the manner in which the planning and execution of the work took place.
It has never been disputed that while one leaves his land in its natural condition, he is not required to adopt measures to prevent the flowage of surface waters from his land to that of his neighbor (Vanderwiele v Taylor, 65 NY 341, 345) and *920 incident to the ownership of land, one of the usual and reasonable activities, is the control and disposition of surface water and the facilitation of its final discharge in accordance with the contour of the watershed. (63 NY Jur, Waters, § 218.) In regard to the rights and remedies of the landowner upon whose property water has been caused to flow, there are three fundamental approaches, or legal theories, which have been adopted by the States of this Nation.
The civil law theory takes the position that an owner of land who interferes with the natural flow of surface water is liable for any injury caused to the lower land. The reasonable use theory is that a landowner who interferes with the flow of water is liable for injury only when his interference is unreasonable. The common-law theory (also known as the common enemy rule), which has been adopted in New York (Barkley v Wilcox, 86 NY 140, Kossoff v Rathgeb-Walsh, Inc., supra), is that each landowner has an absolute right to cast off surface waters as he sees fit, provided improvements are made in good faith to fit the property for some rational use for which it is adapted, and that water is not drained onto the other’s property by pipes, drains or channels. (Bohemian Brethren Presbyt. Church v Greek Archdiocesan Cathedral of Holy Trinity, 94 Misc 2d 841, affd 70 AD2d 538; 63 NY Jur, Waters § 219.)
The rule in New York with respect to diffused surface water is predicated on two Latin maxims set forth in Musumeci v State of New York (43 AD2d 288), aqua currit et debet currere, ut currere solebat (water runs and ought to run, as it has used to run) and cujus est solum, ejus est usque ad coelum et ad inferos (whose is the soil, his is even to the skies and to the depths below).
The rationale for this rule, at the time of its adoption, was the necessity for improving lands and a public policy of encouraging growth, with the recognition that some injury would result from the building towns and cities and also perhaps on a philosophical perference for freedom of each landowner to do as he saw fit on his own property. (Musumeci v State of New York, supra.)
As a consequence of contemporary ecological considerations, the notions expressed above have been discarded, and the control of land use has become somewhat of a national preoccupation as the need for a communal, rather than an individualistic, approach to property ownership has become appar *921 ent. The right of a landowner to do as he will on his property is a relic of a bygone era; as a consequence the common-law rule has been "riddled with exceptions” and the maxims above have been modified by engrafting a third — sic utere tua ut alienum non laedas (use your own property in such a manner as not to injure that of another) (italics supplied by this court; Musumeci v State of New York, supra).
This case, and most controversies concerning diffused surface water, involve invasions of interests in land. The legal relations, as a consequence, are generally stated in terms of property concepts. (Musumeci v State of New York, supra.) However, liability imposed for interfering with surface water is a tort liability (63 NY Jur, Waters, § 226) and, accordingly, a cause of action therefore may be predicated upon the negligent conduct of the upper landowner. (Seifert v Sound Beach Prop. Owners Assn., 60 Misc 2d 300; Bohemian Brethren Presbyt. Church v Greek Archdiocesan Cathedral of Holy Trinity, supra.)
As Judge Cardozo, then Chief Judge of the Court of Appeals, once stated that "the orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty * * * [t]he risk reasonably to be perceived defines the duty to be "obeyed * * * it is risk to another or to others within the range of apprehension” (Palsgraf v Long Is. R. R. Co., 248 NY 339, 343-344) that controls.
The relationship and knowledge of the defendant, Long Island Lighting Co., as an owner of the easement in question, clearly has the quality of the relationship to this community wherein the plaintiff lives so as to require the defendant that foresight necessary to avoid damages by its otherwise lawful acts and use of its land.
Failure to either sufficiently perceive or to act in disregard of the perceptions which should have been clear to the defendant, is negligent and actionable. "Where work is undertaken by a body authorized to perform a public service no action will lie against the party performing such work, so long as the authority is not exceeded and is properly exercised. But 'liability does attach where the authority is negligently or improperly exercised, and where, by a reasonable exercise of the power given either by statute or the common law, damages might be prevented.’ ” (Seifert v Sound Beach Prop. Owners Assn., 60 Misc 2d 300, 304, supra.)
Inasmuch as this court is obligated by statute (UDCA, *922 § 1804) to provide substantial justice to the parties involved in this lawsuit, it is the finding of this court, based upon all the facts before it, that the defendant was negligent in the planning, design, and performance of the work otherwise lawfully done to the detriment of the surrounding community and particularly to this plaintiff. Defendant conducts its business to a great extent by virtue of a grant of authority from the public itself. The defendant is obligated, among other things, to serve the public interest.
While the desirability and lawfulness of the ends which were the goal defendant sought by the performance of its work, the loftiness of the goals has never been a substitute for the required propriety of the means by which those goals were achieved.
 Considering all of the foregoing, the lack of proper planning, design and execution thereof, must be considered a clear indication of the lack of good faith proscribed in the case cited by the defendant as its authority for all that has occurred (Kossoff v Rathgeb-Walsh Inc., 3 NY2d 583, supra). The court is satisfied that plaintiff has established his right to damages.
Judgment for the plaintiff in the sum of $1,000, plus costs and interest.