Allan W. CAMERON, et al., Appellants,

v.

**USAA PROPERTY AND CASUALTY
INSURANCE COMPANY,**
Appellee.

No. 98–CV–764.

District of Columbia Court of Appeals.

Argued April 15, 1999.
Decided July 29, 1999.

John C. Lynch, with whom Jack D. Lapidus, Washington, DC, was on the brief, for appellants.

Michael J. Budow, with whom Jeffrey T. Brown, Bethesda, MD, was on the brief, for appellee.

Before SCHWELB, RUIZ, and REID, Associate Judges.

SCHWELB, Associate Judge:

Allan W. Cameron and Rebecca Hancock Cameron appeal from an order of the trial court, dated April 16, 1998, granting summary judgment in favor of USAA Property and Casualty Insurance Company in a suit by the Camerons in which they challenged the denial of benefits under an "all-risk" homeowner's insurance policy. The trial judge held that recovery for water damage to property located in the Camerons' basement following a major snowstorm was barred by an exclusion from the policy for certain losses caused by "surface water." We conclude that this exclusion unambiguously bars the Camerons' claim. Accordingly, we affirm.

## I.

## THE FACTS

In January 1996, a series of severe winter storms blanketed the District of Columbia in several feet of snow. Approximately thirty inches of snow accumulated on the Camerons' uncovered outdoor patio and on other parts of their property.

On January 19, as a result of rising temperatures and torrential rain, the snow began to melt. The inclement weather had previously damaged two gutters on the Camerons' roof. The disabling of the gutters contributed to the accumulation of additional snow and rain on the patio, and the water began to overflow. The patio had been graded so that excess water would drain into the driveway, but in this case the accumulation was so great that some of the water ran down a stairwell leading from the patio to the basement, past a blocked drain, and under the basement door. The flooding took a heavy toll on the personal property inside the basement. The Camerons asked USAA to compensate them for the damage.

The Camerons' policy provided coverage for any direct physical loss to personal property resulting from the "[w]eight of ice, snow or sleet which causes damage to property contained in a building, [a]ccidental discharge or overflow of water or steam from within a plumbing ... system," or "[f]reezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance," unless such a loss was the subject of an exclusion. Notwithstanding any implication in its title that an all-risk policy protects the insured from all risks, however, the policy went on to provide:

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

\*　　\*　　\*　　\*　　\*　　\*

c. Water Damage, meaning:

(1) flood, *surface water*, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind. . . .

(Emphasis added.)

USAA denied the Camerons' claim for damage to property in the basement, explaining that the loss was excluded from coverage because it was caused, directly or indirectly, by surface water.[1] Contending that they were entitled to recover on the policy because the water which damaged their basement property was not surface water, the Camerons brought suit against

---

1. USAA acknowledged, however, that damage to the second floor of the Camerons' home, resulting from impairment of the operation of the gutters, was a loss covered by the terms of the policy.

USAA in the Superior Court. USAA filed a motion for summary judgment.

On April 15, 1998, the trial judge granted USAA's motion in a written order in which he reasoned, in pertinent part, as follows:

> The parties agree that "surface water," although not specifically defined in the contract or in the reported cases of this jurisdiction, means:
>
>> [W]ater from melted snow, falling rain or rising springs, lying or flowing naturally on the earth's surface, not gathering into or forming any more definite body of water than a mere bog, swamp, slough or marsh and lost by percolation, evaporation or natural drainage. Surface water is distinguished from the water of a natural stream, lake or pond, is not of a substantial or permanent existence, has no banks, and follows no defined course or channel.
>
> *Heller v. Fire Ins. Exchange,* 800 P.2d 1006, 1008–1009 (Colo.1990). Plaintiffs contend that the water damage to their basement does not fit the above definition of "surface water" because both the damaged gutters and the patio are "defined courses or channels" which malfunctioned on the occasion in question. According to plaintiffs, the damage was therefore not caused by "surface water" and the loss is covered under Section I (Perils Insured Against) §§ (C)(11), (12), and (14). Those sections provide coverage for damage caused by weight of ice and snow, or accidental discharge, overflow, or freezing of a plumbing system, respectively.
>
> While the damage caused by plaintiffs' broken gutters might trigger coverage under these sections, to say that the same applies to damage caused by water flowing off of the patio would stretch the terms "plumbing system" and "defined course or channel" beyond their common usage.... Applying common usage, it is quite apparent that plaintiffs' patio is not a "plumbing system" within the

meaning of the coverage provisions of the insurance contract, and it seems equally apparent that the patio is not a "defined course or channel" so as to defeat the contract's exclusion of damage caused by "surface water."

(Citations omitted.) The Camerons filed a timely appeal.

## II.

## LEGAL DISCUSSION

### A. *The standard of review.*

"On appeal from an award of summary judgment, this court conducts an independent review of the record, but the substantive standard is the same as that utilized by the trial court." *Hendel v. World Plan Executive Council,* 705 A.2d 656, 660 (D.C. 1997) (citation and internal quotation marks omitted). Summary judgment is warranted only when the moving party demonstrates that there is no genuine issue as to any material fact and when it is clear that he or she is entitled to judgment as a matter of law. *Colbert v. Georgetown Univ.,* 641 A.2d 469, 472 (D.C.1994) (en banc). "In considering the motion, the judge must determine 'whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented.'" *Hendel, supra,* 705 A.2d at 660 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court views the evidence "in the light most favorable to the party opposing the motion, and that party is entitled to all favorable inferences which may reasonably be drawn from the evidentiary materials." *Beard v. Goodyear Tire & Rubber Co.,* 587 A.2d 195, 198 (D.C. 1991) (citations omitted).

### B. *Coverage.*

On appeal, the parties continue to adhere to the positions that they took in the trial court. They agree that the question of coverage turns primarily on the meaning of the term "surface water," as defined

in *Heller, supra,* and quoted by the trial judge.[2]

*(1) Principles of construction and burden of proof.*

■ An insurance policy is a contract between the insured and the insurer, and in construing it we must first look to the language of the contract. "Where [insurance] contract language is not ambiguous ... a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence." *In re Corriea,* 719 A.2d 1234, 1239 (D.C.1998) (citations and internal quotation marks omitted). "[U]nless it is obvious that the terms used in an insurance contract are intended to be used in a technical connotation, we must construe them consistently with the meaning which common speech comports." *Id.* (citations and internal quotation marks omitted). An insurance contract is not ambiguous "merely because the parties do not agree on the interpretation of the contract provision in question." *Byrd v. Allstate Ins. Co.,* 622 A.2d 691, 694 (D.C.1993) (citation omitted); *Corriea, supra,* 719 A.2d at 1239.

In this jurisdiction, as elsewhere, it has long been "a general rule of construction of policies of insurance ... that any reasonable doubt which may arise as to the meaning or intent of a condition thereof, will be resolved against the insurer." *United States Mut. Accident Ass'n of the City of New York v. Hodgkin,* 4 App. D.C. 516, 523 (1894), *error dismissed,* 17 S.Ct. 1002, 41 L.Ed. 1184 (1897). "[I]t is the insurer's duty to spell out in plainest terms—terms understandable to the man in the street—any exclusionary or delimiting policy provisions." *Holt v. George Washington Life Ins. Co.,* 123 A.2d 619, 621 (D.C.1956) (citation omitted). "Failing such unambiguous language, doubt should be resolved in favor of the insured." *Id.* at

622 (citation omitted). "The rule that a real ambiguity in an insurance policy is to be construed against the company is not a rule of convenience or a mere technicality of legalists." *Hayes v. Home Life Ins. Co.,* 83 U.S.App. D.C. 110, 112, 168 F.2d 152, 154 (1948) (Prettyman, J.). On the contrary, this rule is based on sound public policy, for the contracts in question are written by the insurers, who are "equipped with able counsel and other experts in the field," while the policyholders, who generally play no role in the drafting of such contracts "are, in vast majority, not informed in the obscurities of insurance expertise and not equipped to understand other than plain language." *Id.*

■ But "[t]he canon of construction known as *contra proferentum*—that ambiguities in an insurance contract should be construed against the insurer who drafted the contract—is traditionally used only in cases of doubt where other factors are not decisive." *United States v. Insurance Co. of N. Am.,* 327 U.S.App. D.C. 383, 389 n. 11, 131 F.3d at 1037, 1043 n. 11 (1997) (internal quotation marks and ellipsis omitted) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 206 cmt. a (1979)). We have stated that this canon does not require courts to indulge in "forced constructions to create an obligation against the insurer ...." *Boggs v. Motors Ins. Corp.,* 139 A.2d 733, 735 (D.C.1958). We recently had occasion to capsulize the governing principles as follows:

> Since insurance contracts are written exclusively by insurers, courts generally interpret any ambiguous provisions in a manner consistent with the reasonable expectations of the purchaser of the policy. However, when such contracts are clear and unambiguous, they will be enforced by the courts as written, so long

---

2. *Heller's* definition of surface water is also quoted with apparent approval in a leading treatise, wherein the authors state that "[t]he term 'surface water' as used in an exclusion to an all-risk homeowners' policy, although

undefined, is unambiguous and should be construed according to its plain, popular meaning ...." 11 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 3D § 153:67, at 153–90 (1998).

as they do not violate a statute or public policy.

*Smalls v. State Farm Mut. Auto. Ins. Co.,* 678 A.2d 32, 35 (D.C.1996) (citations and internal quotation marks omitted).

■ The burden is on USAA to prove that the loss falls within an exclusion. *Lang v. F.G. Arwood & Co.,* 65 A.2d 194, 196 (D.C.1949); *New York Life Ins. Co. v. Miller,* 65 App. D.C. 129, 134, 81 F.2d 263, 268 (D.C.Cir.1935). "Where an insurer attempts to avoid liability under an insurance policy on the ground that the loss for which recovery is sought is covered by some exclusionary clause, the burden is on the insurer to prove the facts which bring the case within the specified exception." *Krug v. Millers' Mut. Ins. Ass'n of Ill.,* 209 Kan. 111, 495 P.2d 949, 954–55 (1972) (citation omitted).[3]

(2) *Whether surface water loses its character as such when it accumulates on a man-made surface.*

■ The Camerons first contend that the melted snow and rain which caused damage to the property in their basement was not surface water because it did not "lie or flow naturally on the earth's surface." They point out that the water was on their patio before it overflowed and entered the basement. They assert that because the patio is a man-made structure, and not the earth's surface, the water on the patio was not surface water. We disagree.

■ Although we have found no District of Columbia authority resolving this issue, the courts of other jurisdictions have held that water which has collected on a man-made structure or surface is surface water.

According to those courts, the distinguishing characteristics of surface water are that it has been derived from falling rain or melting snow, that it lies or flows naturally, and that it does not follow a defined course or channel. *See Bringhurst v. O'Donnell,* 124 A. 795 (Del.Ch.1924); *Sherwood Real Estate and Inv. Co. v. Old Colony Ins. Co.,* 234 So.2d 445 (La.Ct.App. 1970). In *Bringhurst,* a case involving the accumulation of water on the roof of a building, the defendants contended that surface water is "only such water as touches the surface of the ground." The court held, however, that

> the phrase "surface water" embraces waters derived from falling rains and melting snows. No case has been cited which holds that in order to become surface water the rains must fall, or the snows must melt[,] upon the soil of the earth. In the case of a building erected on land, the roof is to be regarded as an artificial elevation of the earth's surface. When it intercepts the falling rain or snow, it therefore gathers surface waters.

*Bringhurst, supra,* 124 A. at 797; *accord, Nathanson v. Wagner,* 118 N.J. Eq. 390, 179 A. 466, 468 (1935) (quoting from and following *Bringhurst* ). In *Sherwood Real Estate Co.,* the court, citing *Bringhurst* and *Nathanson,* likewise held that water collected on a roof is surface water. In the court's view, "[i]t would indeed be a strained interpretation to hold that surface water is confined to that portion of rain water which falls directly on the ground." 234 So.2d at 448. We agree with these courts.[4]

(3) *Whether the water on the Camerons' patio followed a defined course or channel.*

---

3. The Camerons claim that the trial judge erroneously placed the burden on them to prove that no exclusion applied, and there is language in the judge's order which arguably supports that interpretation. In conformity with the authorities cited in the text, we agree with the Camerons that the burden is on USAA to prove that the exclusion applies. In reviewing an order granting summary judgment, however, this court reviews the record *de novo, see, e.g .., Colbert, supra,* 641 A.2d at

472, and no purpose would be served by remanding the case to the trial judge to apply the correct legal standard, which we can and must apply ourselves.

4. Other courts, while not explicitly holding that water from snow and rain is surface water even when it has fallen on a man-made structure rather than "on the soil of the earth," *Bringhurst, supra,* 124 A. at 797, have implied or assumed that this is so. *See, e.g.,*

The Camerons next contend that the water on their patio was not surface water because, according to an affidavit by Mr. Cameron, the patio was designed to channel water to the driveway. They claim that the water on the patio was not "lost by percolation, evaporation, or natural drainage," that it followed a "defined course or channel," and that it therefore did not fall within the stipulated definition of surface water.

In this case, regardless of the Camerons' purpose in sloping the patio, the water that landed on that structure flowed naturally down the stairs and into the basement. It did not follow a defined course or channel. Rather, the water located a means of natural drainage. The fact that the patio was *intended* to channel water to the driveway cannot alter the result where, as here, the water was never, in fact, channeled. *See, e.g., Sherwood Real Estate, supra,* 234 So.2d at 446–47 (water which had pooled on a roof that had been built with a slight incline to permit run-off was nevertheless surface water); *Kossoff, supra,* 170 N.Y.S.2d 789, 148 N.E.2d at 133 (water flowing from graded black top area was surface water). This case is unlike *Heller, supra,* 800 P.2d at 1009, relied on by the Camerons, in which the court held that melted snow had lost its character as surface water when it was funneled into man-made, six-inch deep trenches which diverted its regular path over a natural ridge. Here, the water did not lose its character as surface water, for the water was never channeled or diverted from its natural course.

*Front Row Theatre v. American Mfrs. Mut. Ins. Cos.,* 18 F.3d 1343, 1347–48 (6th Cir.1994) (water which overflowed from the driveway and curb in front of a theater and ran through the theater's front door was surface water, precluding recovery under the insurance policy); *Kossoff v. Rathgeb–Walsh, Inc.,* 3 N.Y.2d 583, 170 N.Y.S.2d 789, 148 N.E.2d 132, 133 (1958) (water which ran from defendants' paved lot to plaintiff's parcel held to be diffused surface water); *Cottrell v. Hermon,* 170 A.D.2d 910, 566 N.Y.S.2d 740, 741–42 (1991) (landowner was not liable for the flow of surface water caused by the diffusion of rainwater from her patio); *Fenmode, Inc. v. Aetna*

*(4) Whether the Camerons' patio is a plumbing system.*

The Camerons also contend that the damage to the property in their basement is compensable because their policy provides coverage for the "accidental discharge or overflow of water ... from within a plumbing ... system" and for damage sustained as a result of the "freezing of the plumbing ... system." They assert that their patio is a "plumbing system," or at least a part of a plumbing system, within the meaning of the policy, because it was constructed with a grade to channel water to the driveway.

"[W]ords used [in an insurance policy] should be given their common, ordinary, and it has been said their 'popular' meaning ...." *Unkelsbee v. Homestead Fire Ins. Co. of Baltimore,* 41 A.2d 168, 170 (D.C.1945); *see also Corriea, supra,* 719 A.2d at 1239. The first step in the construction of contracts is to determine "what a reasonable person in the position of the parties would have thought the disputed language meant." *District of Columbia v. C.J. Langenfelder & Son, Inc.,* 558 A.2d 1155, 1159 (D.C.1989) (citation and internal quotation marks omitted). We agree with the trial judge that the Camerons' theory—namely, that their patio is a part of a plumbing system—"would stretch the term 'plumbing system' ... beyond [its] common usage." [5]

*(5) Whether the broken gutters were the sole cause of the damage to the basement property.*

Cas. & Sur. Co., 303 Mich. 188, 6 N.W.2d 479, 480–81 (1942) (holding that a surface water exclusion precluded coverage for damage to basement property as the loss was caused by a pool of water in a cement driveway which overflowed into the plaintiff's store). The Camerons have cited no authority, and we are aware of none, supporting the contention that in order to constitute surface water, snow or rain must land on the soil rather than on a man-made structure.

5. The Camerons cite the District of Columbia Construction Codes for the proposition that a

Finally, the Camerons contend that the exclusion for surface water does not apply because the loss would not have occurred but for the damage to the second floor gutters. They maintain that the water which damaged their basement property fell from the broken gutters and onto the patio, causing an overflow down the basement stairs, and that the loss therefore falls within the provisions of the policy covering damage from "accidental discharge or overflow of water ... from within a plumbing ... system" and for damage from the "freezing of the plumbing ... system."

Although water released from a damaged plumbing system may not lose its character as such when it reaches the ground, *see Holcomb v. United States Fire Ins. Co.*, 52 N.C.App. 474, 279 S.E.2d 50, 55 (1981),[6] this does not render inapplicable the surface water exclusion of the Camerons' policy. Some of the water which damaged the Camerons' property in the basement came from the roof as a result of the damage to the gutters, but large amounts of rain and snow fell directly from the sky onto the patio and, together with the water originating on the roof, flowed down the stairs into the basement. The portion of the water which started in the clouds and landed on the patio, with no stops in between, was, by definition, surface water. The Camerons' policy expressly provides that a loss caused by surface water "is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." In *Casey v. General Accident Ins. Co.*, 178 A.D.2d 1001, 578 N.Y.S.2d 337, 338 (1991), a case in which the plaintiff's policy contained a similar provision, the court held that "[t]he fact that other factors, such as a clogged drain and a sloped roof, may have contributed to the loss is of no consequence under the language of the policy." The same is true here.[7]

## III.

## CONCLUSION

Notwithstanding our obligation to resolve any genuine ambiguities in the insurance policy in the Camerons' favor, we are compelled to conclude that any reasonable reading of the exclusion from coverage of losses attributable to surface water sustains USAA's denial of the Camerons' claim. The decision of the trial court is therefore

*Affirmed.*

---

patio is a "plumbing system." They rely on a provision in the Codes stating, in pertinent part, that "[a]ll roofs, paved areas, yards, courts, and courtyards shall drain into a separate storm sewer system ...." 39 D.C.Reg. 8884 (1992). The specification in the Codes that roofs, paved areas, yards, and courts must drain into a separate sewer system does not convert these entities into drainage or plumbing systems. Indeed, to characterize a yard as a plumbing system, or as a part of one, is hardly within the common usage of the term "yard."

6. In this opinion, however, we need not and do not decide this issue.

7. The Camerons make a related argument that the proximate cause of their loss was the damage to the gutters, that the overflow attributable to the gutters was not surface water, and that their loss is therefore covered by the policy. "[W]hether appearing in a clause creating or in one excepting from liability, *unless qualifying words appear*, such as 'direct,' 'direct or indirect,' 'sole,' etc., the usual rule attributing a result to the proximate and not to the remote cause has been applied." *Unkelsbee, supra*, 41 A.2d at 171 (emphasis added). In the present case, the Camerons' policy provides that "[w]e do not insure for loss caused *directly or indirectly by* [surface water]," and that "[s]uch loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." (Emphasis added.) In light of these provisions, and the indisputable fact that a great deal of snow and rain landed directly on the patio and traveled from there to the basement to complete its unfortunate mission, no impartial jury could reasonably find for the Camerons on the issue of causation.