A. WILMOT DALFERES, Judge ad hoc.
This is a suit growing out of water damage to the home of plaintiffs occasioned on the night of February 24, 1959, when the City of New Orleans, Louisiana, was visited by a torrential rain. Plaintiffs have appealed from a judgment in the lower court dismissing their demands at their costs.
It is not contradicted that the damage to plaintiffs’ home was occasioned by water overflowing from the gutters when the drainpipe leading from the gutters to the sewer line was partially blocked by a bird’s nest or other substances.
Plaintiff is suing under a comprehensive dwelling policy which he had with defendant company. The two pertinent parts of the policy read as follows:
“COVERAGE. This company agrees to pay for direct loss to those classes of property especially insured under Group A of this Schedule (dwelling, outbuildings, contents, rental value, additional living expenses), caused by the following perils as defined and limited herein and further sub j ect to all conditions, limitations and exclusions contained in this policy and having specific reference thereto:
* * * * * *
“11. WATER DAMAGE: Loss by water damage shall mean damage to *639 or destruction of the property covered herein caused by the accidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air-conditioning system or domestic appliance, as well as the cost of tearing out and replacing any part of the building(s) covered required to effect repairs to the system or appliance from which the water or steam escapes and shall include the freezing of plumbing, heating and air-conditioning systems and domestic appliances.”
The sole question presented to the court is whether or not the gutters attached to the house constitute a part of the plumbing system.
Exhibit P-2 is a picture of the home and indicates a point “C” at which the water overflowed the gutters and found its way into the interior of the home. Exhibits P-7 and P-10 are enlarged pictures of the point at which the drainpipe enters into the sub-surface pipes which lead in turn into the city drainage system. It is evident from an examination of P-2 that the entrance of the water at point “C” was not occasioned by any wind or rainstorm, but was occasioned by the gutters at this point overflowing for some reason. It is plaintiffs’ contention that the drainpipe as shown at “A” was clogged because of leaves or birds’ nests having blocked the passage. The question, therefore, resolves around the issue of whether or not the gutters attached to plaintiffs’ residence are considered a part of the plumbing of the residence.
Expert witnesses presented by both the plaintiffs and the defendant testified respectively that the gutters and drainpipe did and did not constitute part of the plumbing. The term plumbing as contained in the insurance policy is a very broad term. From definitions supplied by plaintiffs’ counsel taken from the Encyclopedia Britannica and Collier’s Encyclopedia as well as from Webster’s International Dictionary, we conclude that the term plumbing in its all-inclusive term means the fixtures established at a home for the purpose of drainage and does include roof drains.
The insurance contract entered into by plaintiffs and defendant was prepared by the insurance company. Under a cardinal rule of construction of contracts, where there is a dispute over what are the provisions or what the stipulations mean, a document must be interpreted against the one who has prepared it. Bruno v. McCabe, La.App., 71 So.2d 245; Roman Catholic Church, etc., v. Royal Insurance Co., 158 La. 601, 104 So. 383; Garrell v. Good Citizens Mutual Benefit Assn., 204 La. 871, 16 So.2d 463.
In the case of Albritton v. Fireman’s Fund Insurance Co., 224 La. 522, 70 So.2d 211, the Supreme Court held that an impact between the roadbed of a highway and the body of a dump truck resulting from the rear dual wheels becoming disengaged while the truck was being driven constituted a collision within the automobile insurance policy imposing liability for loss of or damage to automobile by collision or upset. In that case, the Supreme Court refused to restrict the definition of the word “collision” but instead gave it its widest connotation.
Accordingly, it is the opinion of this court that the widest connotation should be given to the word “plumbing.” We experience no difficulty, therefore, in determining that the underground pipes from point “A”, Exhibit P-10, to the terminal of the pipe that empties into the city drainage system constitute a part of the plumbing system.
Defendant’s policy was prepared by a skilled and learned individual who included in the said policy numerous exclusions. If it was the intention of the defendant to-exclude roof drains, including gutters and' drainpipes, from the meaning of the word “plumbing,” then it was incumbent upon defendant to place the exclusion in its policy.
*640 As substantiation for the holding that the word “plumbing” includes roof drains, we quote the following from plaintiffs’ Exhibit P-14, an excerpt from the Encyclopedia Britannica:
“Scope of plumbing. — Plumbing systems include roof drains, area drains, swimming pools, sprinkling systems, standpipes and hose connections for, fire protection, sprinkling systems and hose connection for watering gardens and lawns * * * (Emphasis ours.)
We also quote from Collier’s Encyclopedia, plaintiffs’ P-13, under the heading of plumbing:
“The scope of plumbing goes beyond the design and installation of water pipes and drains. The work of the plumber also involves: gas piping for house heating, hot water production, and kitchen stove; hot water or steam heating systems; vacuum and compressed air piping systems; sprinkler and standpipe connections for fire fighting; rainwater roof drain piping; apparatus for individual water supplies (filters and softeners); swimming pools; and the special plumbing equipment used in industrial buildings.”
Plaintiffs ask for statutory penalties and attorney fees in the amount of $500.00. The court is of the opinion that refusal of the defendant to pay the claim when presented was not arbitrary and capricious to entitle plaintiffs to the penalties and attorney fees. Plaintiffs’ request for penalties and attorney fees is therefore rejected.
It was stipulated that the amount of damage to the residence was $435.00, and if the court should find the defendant liable, it would be that amount less $50.00 deductible, or $385.00.
Judgment of the lower court is therefore reversed, and judgment is hereby rendered in favor of plaintiffs and against defendant in the sum of $385.00 plus legal interest from date of judicial demand, and all costs.
Judgment reversed and rendered.