SIGMOND W. HOLCOMB AND WIFE. LAURA C. HOLCOMB v. UNITED STATES
FIRE INSURANCE COMPANY

No. 8017SC878

(Filed 16 June 1981)

**1. Insurance § 143.1— all risk insurance—gutter downspout as part of plumbing system**

A gutter downspout is, as a matter of law, a part of the plumbing system of a home within the meaning of an "all risk" policy provision covering loss from accidental discharge or overflow of water from within a plumbing system.

**2. Insurance § 144.1— all risk insurance—loss caused by earth movement—jury question**

In an action to recover under an "all risk" policy for damages resulting from the collapse of a basement wall in plaintiff's home allegedly caused by the failure of a gutter downspout which allowed an abnormally large amount of water to be deposited adjacent to the wall, the evidence on motion for summary judgment presented an issue of fact as to whether plaintiff's loss was excluded from coverage under the terms of the policy on the ground that earth movement caused or contributed to the collapse of the wall.

**3. Insurance § 143.1— all risk insurance—construction of exclusion for water damage**

Where a policy of "all risk" insurance provided coverage for "accidental discharge, leakage or overflow of water . . . from within a plumbing . . . system" and excluded coverage for loss caused or contributed to by "surface water" or "water below the surface of the ground," the exclusion was intended to relate only to damage from water not emanating from the plumbing system.

APPEAL by plaintiffs from *Kivett, Judge*. Judgment entered 15 July 1980 in Superior Court, SURRY County. Heard in the Court of Appeals 31 March 1981.

In the early morning hours of 3 September 1978, during an unusually heavy rainstorm a portion of the east basement wall of plaintiffs' home collapsed and fell into the basement causing considerable damage to the structure and to the contents of the basement. At the time of this partial collapse and the resulting damage, the plaintiffs had in effect an "all risk" insurance contract with the defendant insurance company, which included the following language under the caption "Perils Insured Against":

"COVERAGE A — DWELLING . . . against all risks of physical loss to the property covered . . . except as otherwise excluded or limited.

.  .  .  .

13. Collapse of buildings or any part thereof, but collapse does not include settling, cracking, shrinkage, bulging or expansion.

.  .  .  .

15. Accidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air conditioning system or from within a domestic appliance but excluding loss to the appliance from which the water or steam escapes. This peril does not include loss caused by or resulting from freezing."

This insurance contract between the plaintiffs and the defendant insurance company also included the following language under the heading of "Additional Exclusions":

"This policy does not insure against loss:

.  .  .  .

1. caused by, resulting from, contributed to or aggravated by any of the following:

a. flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;

b. water which backs up through sewers or drains; or

c. water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors.

.  .  .  .

2. caused by, resulting from, contributed to or aggravated by any earth movement, including but not limited to earthquake, volcanic eruption, landslide, mudflow, earth sinking, rising or shifting; . . ."

Plaintiffs brought this action against the defendant insurance company alleging that the damage to plaintiffs' home was an insured risk under the contract of insurance with the defendant company, contending that the loss was covered under Items 13 and 15 of the "Perils Insured Against" as above set forth, in that the partial collapse of plaintiffs' east basement wall was caused by an "accidental discharge, leakage or overflow of water . . . from within a plumbing system . . . ." Specifically, plaintiffs contend that during the unusually heavy rainstorm on the morning of the loss, there occurred a failure of a gutter downspout in the area adjacent to the east basement wall, which allowed an abnormally large amount of water to be deposited adjacent to plaintiffs' east basement wall, and that the weight of this water resulted in excessive hydrostatic pressure that caused the partial collapse of the plaintiffs' east basement wall.

The defendant insurance company generally denied plaintiffs' factual allegations, and further alleged the damage to the plaintiffs' home was caused by "flood or surface waters or water below the surface of the ground including that which exerts pressure on or flows, seeps, or leaks through foundations, walls, basement or other floors or through any other opening in foundations, walls, or floors" or was caused by "earth movement, landslide, mud flow, earth sinking, rising or shifting."

The defendant insurance company then moved for summary judgment and submitted in support thereof affidavits generally setting forth the insurance contract between the parties and supporting the defendant's contention that the basement wall collapsed as a result of excessive hydrostatic pressure caused by the weight of the clay soil adjacent to the wall when saturated by water.

The plaintiffs, in opposition to defendant's motion for summary judgment, submitted opposing affidavits to the effect that the failure of plaintiffs' east basement wall was caused by excessive hydrostatic pressure which resulted from the failure of the gutter downspout at the 90° elbow connecting the downspout with the underground drainage pipe, and that when the gutter failed it dumped over three tons of water on a small area of previously saturated soil adjacent to the east basement wall resulting in excessive hydrostatic pressure and causing the col-

lapse of the east basement wall. Plaintiffs' affidavits were to the effect that the failure of the east basement wall was not caused by a gradual shift of clay or any earth movement. Also, plaintiffs' affidavits show that plumbers normally do guttering work and that installation of that portion of the guttering system consisting of an elbow joint connecting with drainage lines from the elbow joint leading away from the structure of a house or into a sewage system requires a licensed plumber.

The court, after hearing arguments, granted defendant's motion for summary judgment.

*Finger, Park and Parker by Daniel J. Park and Raymond A. Parker, II, for plaintiff appellants.*

*Womble, Carlyle, Sandridge and Rice by Daniel W. Donahue and Keith A. Clinard for defendant appellee.*

CLARK, Judge.

Summary judgment is a drastic measure, and it should be used with caution. *Williams v. Power & Light Co.*, 296 N.C. 400, 250 S.E. 2d 255 (1979). On such motion the court is required to view the record in the light most favorable to the party opposing the motion. *Hinson v. Jefferson*, 20 N.C. App. 204, 200 S.E. 2d 812 (1973); *Brice v. Moore*, 30 N.C. App. 365, 226 S.E. 2d 882 (1976). We must accept, therefore, as the trial court was required to do for purposes of this motion, plaintiffs' forecast of evidence that the collapse of the east basement wall was caused by the failure of the downspout which dumped approximately three tons of water on a small area of already saturated soil and that it was the weight of this water that caused the east basement wall to collapse and not the shifting of clay or any earth movement.

Based on these facts, which plaintiffs' affidavits forecast, and which a jury could believe if presented as evidence at trial, we see two issues of law which if either were resolved against plaintiffs, would warrant entry of summary judgment in defendant's favor. The first is whether as a matter of law, a gutter downspout is part of the plumbing system of a home so as to bring damage resulting from "discharge, leakage or overflow" therefrom within Peril 15 of the insurance policy. The second is whether the damage to plaintiffs' home is expressly and unambiguously ex-

cluded from coverage under the policy by language of Additional Exclusions 1 or 2.

[1] With regard to the first issue, we must construe the word plumbing in light of the generally accepted rule in this jurisdiction that where the meaning of a word is capable of more than one reasonable interpretation, doubts will be resolved against the insurance company and in favor of the insured. *Woods v. Insurance Co.*, 295 N.C. 500, 246 S.E. 2d 773 (1978). "If such a word has more than one meaning in its ordinary usage and if the context does not indicate clearly the one intended, it is to be given the meaning most favorable to the policyholder, . . . since the insurance company selected the word for use." *Trust Co. v. Insurance Co.*, 276 N.C. 348, 354, 172 S.E. 2d 518, 522 (1970). Construction of the term "plumbing system" to include gutter downspouts would clearly favor the insured in this case. The surrounding language does not establish whether the parties intended the term to include downspouts and the record does not indicate that the term was defined in the policy. We must turn, therefore, to the ordinary meaning of the term to determine whether any usage of the term "plumbing system" could encompass the gutters and downspouts on the outside of a building.

We believe there can be no doubt that the ordinary meaning of the term "plumbing system" includes the gutters and downspouts designed for the disposal of rainwater. *Accord Schumacher v. Lumbermens Mutual Casualty Co.*, 154 So. 2d 637 (La. App. 1963). We note that the *Schumacher* court found evidence of the ordinary meaning of the term "plumbing" in the articles of two well-known encyclopedias in general use today. From the Encyclopedia Britannica, the *Schumacher* court quotes:

> "Scope of plumbing—*plumbing systems include roof drains*, area drains, swimming pools, sprinkling systems, standpipes and hose connections for fire protection, sprinkling systems and hose connections for watering gardens and lawns . . . ."

*Id.* at 640. The court also quotes the Collier's Encyclopedia's similar definition of the scope of plumbing:

> "*The scope of plumbing* goes beyond the design and installation of water pipes and drains. The work of the plumber also involves: gas piping for house heating, hot water production,

and kitchen stove; hot water or steam heating systems; vacuum and compressed air piping systems; sprinkler and standpipe connections for fire fighting; *rainwater roof drain piping;* apparatus for individual water supplies (filters and softeners); swimming pools; and the special plumbing equipment used in industrial buildings."

*Id.* While we believe this alone establishes plaintiffs' construction of the term as *one reasonable reading* of the policy language, we find even more persuasive authority upon which to base our holding.

The North Carolina Building Code Council and the North Carolina Department of Insurance, who jointly publish the State Building Code, define plumbing as follows:

"*Plumbing.* Plumbing is the practice, materials, and fixtures used in the installation, maintenance, extension, and alteration of all piping, fixtures, appliances, and appurtenances in connection with any of the following: Sanitary drainage or *storm drainage facilities*, the venting system and the public or private water-supply systems, within or adjacent to any building, structure, or conveyance; also the *practice and materials used in the installation, maintenance, extension, or alteration of stormwater,* liquid-waste, or sewerage, and water-supply *systems of any premises to their connection with any point of public disposal or other acceptable terminal.*"

NORTH CAROLINA STATE BUILDING CODE, Vol. II, *Plumbing* § 301 at 3-6 (1980) (emphasis added). We note, too, that the Code contains an entire chapter (Ch. XV) devoted to the regulation of storm drains. Chapter XV prescribes the conductors and connections that a plumber may use (§ 1504), specifies the manner of constructing roof drains (§ 1505), and includes tables specifying the size of vertical leaders (defined in § 301, at 3-5 of the Code as downspouts) and gutters for various roof sizes up to 29,000 square feet (§§ 1506.1, 1506.3). We believe such extensive treatment of storm drainage systems, in the major source of regulation of buildings in this State (see G.S. 143-135.1 to -143), and in a separate volume of that regulatory Code devoted exclusively to plumbing, renders defendant's contention "that 'plumbing system' should not be construed to include gutters or roof drains" without

merit. We hold that, as a matter of law, Peril 15 of the insurance policy covered any loss to plaintiff attributable to water discharged from his gutters and downspouts.

We turn then to the second issue: whether plaintiff's loss is expressly and unambiguously excluded from coverage. The insuring provisions of the policy extend coverage only, "except as otherwise excluded or limited." Appellee contends that, even if the gutters and downspouts are a part of the plumbing system of plaintiffs' house, coverage under the policy for plaintiffs' loss is expressly excluded by the language of the policy. The applicable exclusions provide:

"This policy does not insure against loss:

. . . .

1. caused by, resulting from, contributed to or aggravated by any of the following:

a. flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;

b. water which backs up through sewers or drains; or

c. water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors.

. . . .

2. caused by, resulting from, contributed to or aggravated by any earth movement, including but not limited to earthquake, volcanic eruption, landslide, mudflow, earth sinking, rising or shifting; . . ."

[2] Exclusion 2 can be dismissed out of hand. It is not a legitimate ground for summary judgment. The affidavit of Larry R. Absher, Sr., a licensed professional engineer, was to the effect that he "inspected the soil around the manholes, fence post, and fire hydrants in the general area of Mr. Holcomb's home and found absolutely no evidence of any earth movement around these objects." Absher further stated that in his professional opinion

Holcomb v. Insurance Co.

"the failure of the east basement wall was not a result of a gradual shift of clay or earth movement." These statements were sufficient to create an issue of fact as to whether any earth movement caused or contributed to the collapse of the east basement wall. Summary Judgment is not to be entered on a controverted issue of material fact. *Wall v. Flack*, 15 N.C. App. 747, 190 S.E. 2d 671 (1972).

[3] Exclusion 1 requires more extended analysis. On its face Exclusion 1 would appear to exclude plaintiffs' loss from coverage under the policy. Although the affidavits fail to conclusively establish whether the water from the downspout sank into the ground or accumulated on the surface, the language of the Exclusion extends to both "surface water" and "water below the surface of the ground." The water would have to fit one of these categories, and it is this fact that disturbs us. Any water discharged from the guttering system would by definition become either surface water or ground water. Would it thereby lose its character as water discharged from a plumbing system? We think not.

Appellee cites cases decided upon similar fact situations holding that when water discharged from a plumbing system settles upon the surface of or into the ground, that water is brought within the language of Exclusion 1. *Krug v. Millers' Mutual Insurance Ass'n.*, 209 Kan. 111, 495 P. 2d 949 (1972); *Park v. Hanover Insurance Company*, 443 S.W. 2d 940 (Tex. Civ. App. 1969). Both cases concerned coverage provisions similar to Peril 15 and exclusions similar to Exclusion 1. We find more appealing, however, the logic of the cases which have held to the contrary, that damage caused by water discharged from a plumbing system covered under provisions similar to Peril 15 does not fall within Exclusion 1. *World Fire & Marine Ins. Co. v. Carolina Mills Dist. Co.*, 169 F. 2d 826 (8th Cir. 1948); *Hartford Accident and Indemnity Co. v. Phelps*, 294 So. 2d 362 (Fla. App. 1974); *King v. Travelers Insurance Company*, 84 N.M. 550, 505 P. 2d 1226 (1973).

As those cases point out, if we construe the language of Exclusion 1 as appellee would have us to do, then we are faced with one provision that says plaintiffs' loss is covered; one that says it is not. As has been noted:

" 'If the excepting clause be construed as applying to the state of facts in this case, as appellant contends, an irreconcilable conflict must exist between its meaning and the insuring clause, with the result that the contract must be found to be ambiguous. In that event the contract will be construed favorable to the insured who did not prepare it. The application of the latter rule of construction would lead to striking down the excepting clause . . . .' "

*King v. Travelers Insurance Co.*, 84 N.M. 550, 555, 505 P. 2d 1226, 1231 (1973), *quoting, World Fire & Marine Ins. Co. v. Carolina Mills Dist. Co.*, 169 F. 2d 826 (8th Cir. 1948). While we agree that appellee's proposed construction of Exclusion 1 creates an apparent contradiction, we do not believe it necessary to strike the exclusion. It is the rule in our State that each clause in a policy of insurance is to be given effect if this can be done by reasonable construction. *Woods v. Insurance Co.*, 295 N.C. 500, 246 S.E. 2d 773 (1978). "The object of interpretation should not be to find discord in differing clauses, but to harmonize all clauses if possible." *Peirson v. Insurance Co.*, 249 N.C. 580, 583, 107 S.E. 2d 137, 139 (1959). One reading of the two clauses that would give meaning to both would be to construe Exclusion 1 as excepting from coverage all water damage not expressly and unambiguously insured against in the coverage provisions of the policy. This is the reading that we adopt.

In so holding we note that following the language of coverage in Peril 15 and *within the same clause* the insurer specifically excluded "loss to the appliance from which the water or steam escapes" and went on to note that "This policy does not include loss caused by or resulting from freezing." Defendant has shown by this language that it was capable of clearly and unambiguously stating circumstances to which the coverage under Peril 15 would not extend. We believe it should have specifically stated any additional exception limiting plaintiffs' recovery for loss caused by water discharged from within a plumbing system within Peril 15 if it wished to apply the exclusion to losses occurring thereunder. While we believe that broad, general provisions for coverage under a policy may properly be limited by specific exclusions, we have extreme difficulty endorsing broad, general exclusions which seek to render illusory narrow and specific provisions of coverage. This view is supported by the accepted rule of construc-

tion that exceptions from liability are not favored, and will be strictly construed against the insurer. *Trust Co. v. Insurance Co.,* 276 N.C. 348, 172 S.E. 2d 518 (1970); *Insurance Co. v. Insurance Co.,* 269 N.C. 341, 152 S.E. 2d 436 (1967); *Thompson v. Accident Association,* 209 N.C. 678, 184 S.E. 695 (1936); and *Womack v. Insurance Co.,* 206 N.C. 445, 174 S.E. 313 (1934).

Our holding then is indentical with the holding of the Florida Court of Appeals in *Hartford Accident and Indemnity Co. v. Phelps,* 294 So. 2d 362, 363 (Fla. App. 1974):

"When we consider the terminology used in the exclusion clause in pari materia with the affirmative statement of coverage from leaks in the plumbing system, we conclude that the exclusion was intended to relate only to damage from water not emanating from the plumbing system."

It was thus a question for the jury whether the three tons of water dumped on the small area of soil adjacent to the east basement wall was in fact the efficient and proximate cause of the wall's subsequent collapse. *See Wood v. Insurance Co.,* 245 N.C. 383, 96 S.E. 2d 28 (1957); *Harrison v. Insurance Co.,* 11 N.C. App. 367, 181 S.E. 2d 253 (1971).

Reversed and remanded.

Judges VAUGHN and WELLS concur.