NANCY SILVERS, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF STUART MARTIN WILLIAMS, DECEASED v. HORACE MANN INSURANCE COMPANY, ROGER MATTHEWS, AS AGENT, AND INDIVIDUALLY, JAMES RICHARD BELL, AND ROBERT EARL BELL

No. 8711SC317

(Filed 3 May 1988)

1. **Insurance § 69— underinsured motorist coverage—settlement with tortfeasors no bar to recovery**

   Where the terms of an insurance policy providing underinsured motorist coverage stated that the insurer would pay damages which a covered person was "legally entitled to recover" from an underinsured motorist, and the policy also provided that the insurer would pay only after the limits of liability had been exhausted by payment of judgments or settlements, plaintiff was not barred from recovery under the underinsured liability provision because she had entered into a consent judgment with the tortfeasors and had been paid the maximum amount under their liability policy, since to deny recovery would contravene the purposes behind underinsured motorist coverage, and since it was reasonable for plaintiff to believe that she was required to settle or obtain a judgment against the tortfeasors and their liability insurer before seeking payment from her own liability carrier. N.C.G.S. § 20-279.21(b)(4) (1983).

2. **Insurance § 69— underinsured motorist coverage—failure to obtain insurer's consent before settling with tortfeasors—action not barred**

   Plaintiff's action to recover underinsurance benefits was not barred by her failure to obtain defendant insurance company's consent before entering into a consent judgment with the tortfeasors, since defendant did not have a right to subrogation under the terms of its policy and the consent to settle provision of the policy served no valid purpose.

1

**3. Insurance § 69— underinsured motorist coverage—failure to serve complaint in action against tortfeasors or insurer—action not barred**

There was no merit to defendant insurer's contention that plaintiff's recovery of underinsured motorist benefits was precluded because plaintiff failed to serve copies of the summons or complaint in her action against the tortfeasors on defendant, since defendant did not plead failure to give notice of the accident as a defense to coverage in its answer. Furthermore, insured does not lose his action against the insurer when he fails to serve suit papers on the insurer; rather, the insurer is not "bound" by the judgment, a claim which plaintiff never made in this action. N.C.G.S. § 20-279.21(b)(3).

APPEAL by plaintiff from *Barnette (Henry V.), Judge.* Judgments entered 8 September 1986 and 28 October 1986 in Superior Court, HARNETT County. Heard in the Court of Appeals 20 October 1987.

*Anderson, Broadfoot, Johnson & Pittman, by Henry L. Anderson, Jr. and Clay A. Collier, for plaintiff-appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Grady S. Patterson, Jr. and Theodore B. Smyth, for defendant-appellees Horace Mann Insurance Company and Roger Matthews.*

*Downing, David & Maxwell, by Edward J. David, for defendant-appellees James Richard Bell and Robert Earl Bell.*

GREENE, Judge.

This is an action to collect underinsurance benefits and damages arising out of an automobile accident. Plaintiff appeals from the entry of summary judgment against her.

The plaintiff, Nancy Silvers (hereinafter "Silvers"), brought this suit individually and in her capacity as administratrix of the estate of her deceased son against defendants James Richard Bell, Robert Earl Bell (hereinafter the "Bells"), Horace Mann Insurance Company (hereinafter "Horace Mann") and its agent, Roger Matthews (hereinafter "Matthews"). Plaintiff seeks payment pursuant to an insurance policy issued by Horace Mann for underinsured motorist (hereinafter "UIM") benefits as well as damages for breach of contract, negligence, fraud, bad faith and unfair and deceptive trade practices. This appeal concerns plaintiff's right to underinsurance benefits from Horace Mann.

On 14 March 1984, plaintiff's son was involved in a one-car automobile accident in which James Richard Bell was driving a

car owned by his father, Robert Earl Bell. On 20 March 1984, plaintiff's son died from the injuries he received in the accident. Plaintiff, as the administratrix of her son's estate, then sued the Bells for the wrongful death of her son on 4 May 1984. On 14 May 1984, plaintiff, the Bells, and the liability insurance carrier for the Bells, Indiana Lumbermans Mutual Insurance Company, entered into a consent judgment granting plaintiff recovery of $25,000 against the Bells and Indiana Lumbermans. The consent judgment provided:

> THIS CAUSE, coming on to be heard and being heard before the undersigned Judge upon statement of counsel for Plaintiff and Defendants that this cause has been settled and adjusted between the parties by agreement under the terms of which the Plaintiff shall have and recover judgment in the amount of Twenty-Five Thousand Dollars ($25,000.00); AND IT FURTHER APPEARING TO THE COURT from the face of the Complaint that this is an action for recovery for wrongful death of Plaintiff's intestate for which damages far exceed the liability coverage of the Defendants' insurance carrier, Indiana Lumbermans Mutual Insurance Co; AND IT FURTHER APPEARING TO THE COURT, upon statement of counsel, that the liability of Indiana Lumbermans Mutual Insurance Company, which is the insurance carrier for the Defendant, is limited to Twenty-Five Thousand Dollars ($25,000.00) per person for bodily injury; AND IT FURTHER APPEARING TO THE COURT that the primary carrier, Indiana Lumbermans Mutual Insurance Co., wishes to pay the policy limits in order to avoid unnecessary litigation costs as liability on the part of the Defendants is clear and the damages of the Plaintiff's intestate far exceed the policy limits covered by the primary liability carrier, Indiana Lumbermans Mutual;

> AND IT FURTHER APPEARING TO THE COURT that the Plaintiff's intestate was covered by underinsured motorist coverage through The Horace Mann Company and that *this consent judgment is not to be construed in any way to adversely affect the rights of Plaintiff or her intestate concerning any such underinsured coverage;*

> NOW, THEREFORE, IT IS BY CONSENT ORDERED AND ADJUDGED that the Plaintiff's intestate have and recover of and

from the Defendants, by and through their primary liability insurance carrier, Indiana Lumbermans Mutual Insurance Company, the sum of Twenty-Five Thousand Dollars ($25,000.00) and that the same *shall be a full and final release of Indiana Lumbermans Mutual Insurance Company and the Defendants. It is hereby further ordered that this consent judgment shall not release nor relinquish any rights that the Plaintiff's intestate has or might have against Horace Mann Company under any underinsured liability coverage.*

(Emphasis supplied.)

On 27 March 1985, plaintiff instituted this action against the Bells and Horace Mann for recovery of UIM benefits under the automobile insurance policy issued by Horace Mann to plaintiff. In addition, plaintiff sued Horace Mann and Matthews for breach of contract, negligence, fraud, bad faith and unfair and deceptive trade practices. Defendants Horace Mann and Matthews moved to dismiss the action under N.C.G.S. Sec. 1A-1, Rule 12(b)(6) (1983), asserting various violations of the policy as a bar to plaintiff's recovery.

Defendants Bell moved to dismiss based on the previous consent judgment. The court considered matters outside the pleadings and treated the motion as one for summary judgment under N.C.G.S. Sec. 1A-1, Rule 56. The trial judge granted defendants' motions for summary judgment. Plaintiff appeals the grant of these motions.

---

This appeal presents the following issues: (I) Whether plaintiff is barred from recovery from Horace Mann because she is not legally entitled to recover additional damages from the tortfeasors; and (II) whether plaintiff's failure to obtain Horace Mann's consent before settling with the tortfeasors bars her recovery from Horace Mann.

Summary judgment is proper where pleadings, depositions, interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that a party is entitled to judgment as a matter of law. *Cutchin v. Pledger,* 71 N.C. App. 279, 281, 321 S.E. 2d 462, 464 (1984).

At the outset, we note the statute in effect at the time the policy was issued and at the time of the accident, N.C.G.S. Sec. 20-279.21 (1983), was the version of the statute amended in 1983. Effective 1 October 1985, the statute was again significantly amended to provide for different procedures in claims for under-insurance benefits. Therefore, our discussion of the applicable statutory provisions concerns only the 1983 version.

I

[1] Under the terms of N.C.G.S. Sec. 20-279.21(b)(4) and the policy in question, an underinsured motor vehicle is included within the definition of an uninsured motor vehicle (hereinafter "UM"). The statutory definition of an underinsured motor vehicle, which is similar to the definition given in the policy, provides:

> An "uninsured motor vehicle," as described in subdivision (3) of this subsection, includes an "underinsured highway vehi-cle," which means a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the owner's policy.

N.C.G.S. Sec. 20-279.21(b)(4). This definition evinces a public policy to place the insured in the position that would have existed if the tortfeasor had carried liability insurance limits equal to the liabili-ty coverage carried by the insured. *See* 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* Secs. 32.2 at 13 and 35.2 at 44 (2d ed. 1987) (provision requiring insurers to make available UIM coverage limits in an amount equal to amounts selected by insured for his liability coverage clearly manifests public policy of assuring indemnification to insured). UIM coverage is required unless a named insured in the policy rejects the coverage. *See* N.C.G.S. Sec. 20-279.21(b)(4). The statute is remedial in nature and is to be liberally construed to effectuate its purpose of providing coverage for damages to injured parties caused by insured motorists with liability coverage not sufficient to provide com-plete compensation for the damages. *See American Tours, Inc. v. Liberty Mut. Ins. Co.*, 315 N.C. 341, 346, 338 S.E. 2d 92, 96 (1986) (avowed purpose of Financial Responsibility Act, of which Section 279.21 is a part, is to compensate innocent victims of financially

irresponsible motorists); *Hendricks v. U.S. Fidelity and Guaranty Co.*, 5 N.C. App. 181, 184, 167 S.E. 2d 876, 877 (1969).

Subdivision (4) also states that "[t]he [UM coverage] provisions of subdivision (3) shall apply to the coverage required by this subdivision." N.C.G.S. Sec. 20-279.21(b)(4); *see also Crowder v. North Carolina Farm Bureau Mut. Ins. Co.*, 79 N.C. App. 551, 556, 340 S.E. 2d 127, 130-31, *disc. rev. denied*, 316 N.C. 731, 345 S.E. 2d 387 (1986). Subdivision (3) requires automobile liability policies issued in North Carolina to contain coverage "for the protection of persons insured thereunder who are *legally entitled to recover* damages from owners or operators of uninsured motor vehicles . . . because of bodily injury, . . . including death, resulting therefrom . . . ." N.C.G.S. Sec. 20-279.21(3).

The policy also includes underinsured motorists within the definition of uninsured motorists and provides:

> We will pay damages which a covered person is *legally entitled to recover* from the owner or operator of an uninsured motor vehicle because of:
>
> > 1. Bodily injury sustained by a covered person and caused by an accident; and
> >
> > 2. Property damage caused by an accident.

Horace Mann argues that because plaintiff entered into the consent judgment, she is no longer "legally entitled to recover damages" from the Bells so that she may not recover UIM benefits from Horace Mann.

The clear language of the consent judgment was that it was to be a "full and final release" of the Bells and their liability insurer. Therefore, plaintiff is barred from recovering further damages from the Bells. However, plaintiff reserved her right of action against Horace Mann for UIM benefits. Accordingly, we do not decide whether plaintiff could proceed with this action had she given a general release to the Bells without reserving her action against Horace Mann. Instead, we must determine the effect of the consent judgment on plaintiff's right to recover from Horace Mann under the terms of the policy.

The policy contains an exhaustion clause which appears only in the section of the policy applicable to UIM coverage. This pro-

vision states: "We will pay under this coverage only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements." A similar statutory provision provides:

> The insurer shall not be obligated to make any payment because of bodily injury to which underinsured motorist insurance coverage applies and that arises out of the ownership, maintenance, or use of an underinsured highway vehicle until after the limits of liability under all bodily injury liability bonds or insurance polices applicable at the time of the accident have been exhausted by payment of judgments or settlements. . . .

N.C.G.S. Sec. 20-279.21(b)(4).

Plaintiff argues that in an effort to exhaust the applicable liability policy held by the Bells, she entered into the consent judgment with the Bells and Indiana Lumbermans. The judgment states the liability of Indiana Lumbermans is $25,000 and in order to avoid unnecessary litigation costs, it paid its policy limits since the damages exceeded that amount. Plaintiff argues that by entering into the consent judgment with the Bells, she was seeking to exhaust the applicable liability insurance coverage limits in compliance with the statutory and policy provisions and therefore her recovery against Horace Mann is not barred.

Our Supreme Court has stated: "The terms of an insurance contract are not bargained for in the traditional sense. Insurance policies are offered on a take-it-or-leave-it basis and, frequently, the only term over which the insured has any say is the amount of coverage." *Great American Ins. Co. v. Tate Const. Co.*, 303 N.C. 387, 395, 279 S.E. 2d 769, 774 (1981). Furthermore, in interpreting the terms of an insurance contract, our Supreme Court has stated:

> The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder.

*Woods v. Nationwide Mutual Ins. Co.*, 295 N.C. 500, 506, 246 S.E. 2d 773, 777 (1978). In addition, an insurance contract should be given the construction a reasonable person in the position of the insured understands it to mean. *Grant v. Emmco Ins. Co.*, 295 N.C. 39, 43, 243 S.E. 2d 894, 897 (1978).

The exhaustion clause of the policy and the similar wording of Section 20-279.21(b)(4) obligate the insurer to pay *only after* the applicable liability bonds or policies have been exhausted by payment of a judgment or settlement. In entering the consent judgment with the Bells and their insurer, plaintiff established her legal entitlement to damages as to those parties. However, once the applicable liability policy was exhausted in compliance with the provision, plaintiff was no longer legally entitled to recover additional damages from the tortfeasors. To read the "legally entitled to recover damages" provision as Horace Mann argues creates a conflict with the exhaustion provision in Section 20-279.21(b)(4) which urges settlement or judgment *before* obligating the insurer to pay UIM benefits. Given the remedial purposes of underinsurance coverage, we do not believe the General Assembly in creating UIM coverage intended this reading of the statute.

A remedial statute should be construed liberally in the light of the evils sought to be remedied and the objectives to be obtained. *Wade v. Wade*, 72 N.C. App. 372, 379, 325 S.E. 2d 260, 268, *disc. rev. denied*, 313 N.C. 612, 330 S.E. 2d 616 (1985). The evil sought to be remedied by underinsurance coverage is compensation for injuries caused by tortfeasors with liability insurance insufficient to adequately compensate the injured party. In the context of a situation where the tortfeasor's policy is the only applicable liability policy, the objective is to provide the injured insured protection against injuries in the amount of the difference between the insured's own liability coverage and the tortfeasor's liability coverage. *See* N.C.G.S. Sec. 20-279.21(b)(4). Given the fact that plaintiff settled for the maximum amount available under the tortfeasor's liability policy, it would contravene the purposes behind UIM coverage to read the "legally entitled to recover damages" as a bar to plaintiff's recovery. In addition, given the language of the exhaustion clause which urges settlement or judgment before obligating the UIM carrier, we hold that it was reasonable for plaintiff to believe that she was required to settle

or obtain a judgment against the tortfeasors and their liability insurer before seeking payment from Horace Mann. *Cf. Progressive Casualty Ins. Co. v. Kraayenbrink,* 370 N.W. 2d 455, 460 (Minn. App. 1985) (court held that similar exhaustion clause would lead a reasonable person to believe that settlement without prior notice was permissible even though it destroyed insurer's subrogation rights).

Defendant cites *Brown v. Lumbermens Mut. Casualty Co.,* 285 N.C. 313, 204 S.E. 2d 829 (1974) and *Buchanan v. Buchanan,* 83 N.C. App. 428, 350 S.E. 2d 175 (1986), *disc. rev. denied,* 319 N.C. 224, 353 S.E. 2d 406 (1987), for the proposition that because plaintiff settled with the Bells, plaintiff may not recover from Horace Mann as she is no longer legally entitled to recover further damages from the tortfeasors. In *Brown,* our Supreme Court held an insured could not recover against its UM carrier where the statute of limitations had run against the tort of the uninsured motorist since the insured was no longer "legally entitled to recover" from the uninsured motorist. The court held the insured's action against his UM carrier was derivative and conditional on his action against the uninsured motorist. Therefore, since the insured's action against the uninsured motorist was barred, it could not collect on its claim against its UM carrier. *Brown,* 285 N.C. at 319-20, 204 S.E. 2d at 834. Similarly, in *Buchanan,* this court held that a release of two tortfeasors after payment from the tortfeasors' insurance carrier discharged the carrier because its liability was derivative in nature.

However, UIM coverage was not available until 1 October 1979, some four years after the *Brown* decision. 1979 N.C. Sess. Laws ch. 675. Furthermore, *Brown* dealt only with *un*insured motorist benefits, while the exhaustion clause here applies only to *under*insured motorist benefits by the terms of the policy and because in the uninsured motorist context, there are no applicable insurance policies which must be first exhausted. The existence of other insurance policies in the underinsured motorist context creates distinctive problems which do not arise in uninsured motorist coverage. *See Widiss,* Sec. 31.6 at 9; Note, *Underinsured Motorist Coverage: Legislative Solutions to Settlement Difficulties,* 64 N.C. L. Rev. 1408, 1410-11 (1986) (tortfeasor's insurer seeks to fulfill its duty to defend and indemnify by paying policy limits and obtaining release for its insured while UIM carrier

desires to protect its subrogation rights which would be destroyed by a release). *Cf. Haas v. Freeman*, 236 Kan. 677, 682, 693 P. 2d 1199, 1203 (1985) (underinsured motorist claims sufficiently distinguishable from uninsured claims to require different procedures at trial). Therefore, courts should exercise care in applying the judicial precedents of uninsured motorist cases to underinsured motorist cases. *See Widiss*, Sec. 31.6 at 9.

Neither *Brown* nor *Buchanan* addressed the exact issue now before this court. Neither addressed the effect of an exhaustion clause which requires settlement or judgment against the tortfeasor's insurer before obligating the underinsurance carrier to pay. Where an insurance policy contains contradictory language, doubts as to the effect of the various provisions will be resolved against the insurer and in favor of the policyholder. *See Woods*, 295 N.C. at 506, 246 S.E. 2d at 777. Therefore, we reject Horace Mann's proposition that because plaintiff is no longer "legally entitled to recover" additional damages from the underinsured tortfeasor, she may not recover UIM benefits from Horace Mann.

II

[2]  Horace Mann also argues plaintiff violated the consent to settle provision of the policy and therefore may not recover against it. This provision states:

A. We do not provide Uninsured Motorist Coverage for property damage or bodily injury sustained by any person:

.  .  .  .

2. If that person or the legal representative *settles* the bodily injury or property damage claim *without our written consent.*

This provision is not included in Section 20-279.21(b)(3) or (b)(4) and appears only in the policy.

Consent to settle clauses are exclusionary provisions which limit the liability of insurers and therefore are not favored. *See Holcomb v. U.S. Fire Ins. Co.*, 52 N.C. App. 474, 482-83, 279 S.E. 2d 50, 56 (1981). Exclusion clauses are to be strictly construed against the insurer. *Id.* In the context of a condition precedent to an insured collecting insurance benefits, our Supreme Court has

stated: "the scope of the condition precedent which will relieve an insurer of its obligations under an insurance contract, is only as broad as its purpose . . . ." *Great American I,* 303 N.C. at 396, 279 S.E. 2d at 774-75. We hold that the consent to settlement clause in this case should likewise be construed in light of its purpose.

Cases upholding consent to settle clauses do so based on protecting an insurer's right to subrogation. *See, e.g., March v. Mountain States Mut. Casualty Co.,* 101 N.M. 689, 692, 687 P. 2d 1040, 1043 (1984) (purpose of consent to settle clause is to protect insurer's subrogation rights); *Rister v. State Farm Mut. Auto Ins. Co.,* 668 S.W. 2d 132, 136 (Mo. App. 1984) (same); *see also Porter v. MFA Mut. Ins. Co.,* 643 P. 2d 302 (Okla. 1982) (consent to settle clause is against public policy but release of tortfeasor destroyed subrogation rights of insurer and was defense to insurer's obligation to pay under the policy); Note, 64 N.C. L. Rev. at 1411; Thomas, *No-Consent-to-Settlement Clauses and Uninsured Motorist Coverage,* 35 Fed'n Ins. Couns. Q. 71, 74 (1984) (most frequently stated rationale for upholding clause is to protect insurer's right to subrogation); *cf. Galinko v. Aetna Casualty and Surety Co.,* 432 So. 2d 179 (Fla. 1st Dist. Ct. App. 1983) (Florida court applying North Carolina law held that violation of consent to settle clause did not excuse insurer from paying benefits when insurer was not prejudiced by an unconsented to release of the uninsured tortfeasor since no recovery by way of subrogation was realistically available because of financial status of tortfeasor).

Horace Mann argues that because plaintiff violated the consent to settle provision she destroyed its right to be subrogated once it made payment to plaintiff for her loss. *See Milwaukee Ins. Co. v. McLean Trucking Co.,* 256 N.C. 721, 726, 125 S.E. 2d 25, 29 (1962) ("The general rule is that upon payment of a loss, pursuant to the terms of its contract of insurance, the insurer . . . [is] entitled to be subrogated pro tanto to any right of action which the insured may have against a third party whose negligence or wrongful act caused the loss."). The right of an insurer to be subrogated may come about by contract, equity or statute. *See id.* Horace Mann maintains that it had a right of subrogation pursuant to N.C.G.S. Sec. 20-279.21(b)(3) which provides:

> In the event of payment to any person under the coverage required by this section *and subject to the terms*

*and conditions of such coverage,* the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement [or] judgment resulting from the exercise of any limits of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.

(Emphasis supplied.) Other jurisdictions interpreting similarly worded statutes are split on whether this provision gives an insurer a right to subrogation in the UM and UIM context. *Compare Niemann v. Travelers Ins. Co.,* 368 So. 2d 1003, 1007 (La. 1979) (statute provides only for reimbursement from proceeds of judgment against underinsured tortfeasor) *and Reese v. Preferred Risk Mut. Ins. Co.,* 457 S.W. 2d 205, 209-10 (Mo. App. 1970) (both statute and similarly worded provision in policy provide only for right of reimbursement from proceeds of any settlement or judgment insured obtains from uninsured motorist) *with Frey v. Independence Fire and Casualty Co.,* 698 P. 2d 17-21 (Okla. 1985) (statute provides right of subrogation to insurer).

Horace Mann also argues that under the policy and equitable principles, it had a right to subrogation upon payment of the loss to plaintiff. We note the above-quoted section of the statute specifically states that its provisions are subject to the "terms and conditions of [the uninsured motorist] coverage." The policy provides:

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, *our rights in this paragraph do not apply under:*

1) *Parts B and C . . . .*

(Emphasis supplied.)

Part C of the policy is the section providing for UM and UIM coverage. From this language, it is clear that Horace Mann does

not have a right to subrogation under the terms of its policy. Furthermore, assuming Horace Mann had a right of subrogation in equity or by statute, we hold it waived the right under this section of the policy. *See* 16 M. Rhodes, *Couch on Insurance 2d* Sec. 61.15 at 89 (1983) (since right of subrogation arises for benefit of insurer, it may waive right by contract); 44 Am. Jur. 2d *Insurance* Sec. 1799 at 791 (1982) (insurance company may waive any right it has to subrogation by contract).

Therefore, since Horace Mann has waived its right to subrogation, the clause serves no valid purpose. *See* Hentemann, *Underinsured Motorist Coverage; A New Coverage with New Problems,* 1983 Ins. Couns. J. 365, 368-69 (existence of exhaustion clause and consent to settle clause gives insurer power to frustrate application of UIM coverage by forcing injured party into a full trial). We hold that plaintiff's failure to obtain Horace Mann's consent before entering into the consent judgment does not bar its recovery against Horace Mann as a matter of law. *See Branch v. Travelers Indemnity Co.,* No. 8726SC861 (filed 3 May 1988) (insurer not prejudiced by violation of consent to settle clause where insurer has no right to subrogation).

### III

[3]   Horace Mann also argues that plaintiff violated certain provisions of Section 20-279.21(b)(3)(a) and that this precludes plaintiff's recovery of UIM benefits. Specifically, it argues plaintiff's failure to serve copies of the summons or complaint in its action against the Bells bars plaintiff's recovery. Horace Mann apparently relies on the following provisions as a defense:

> [T]he insurer shall be bound by a final judgment taken by the insured against an uninsured motorist if the insurer has been served with copy of summons, complaint or other process in the action against the uninsured motorist . . . . The insurer, upon being served as herein provided, shall be a party to the action between the insured and the uninsured motorist though not named in the caption of the pleadings and may defend the suit in the name of the uninsured motorist or in its own name.

N.C.G.S. Sec. 20-279.21(b)(3)(a). Likewise, the policy provides that "[a]ny judgment for damages arising out of a suit is not binding

on us unless we have been served with a copy of the summons, complaint or other process against the uninsured motorist."

However, Horace Mann pled neither the statute nor any other provision relating to notice of the accident as a defense to coverage in its answer and nothing in the record indicates this was a basis of summary judgment below. However, subdivision (b)(3)(a) does provide a guide for the posture of this case on remand. Assuming the General Assembly meant to include a consent judgment within a "final judgment" as it is used above, these provisions do not provide that the insured loses his action against the insurer where he fails to serve suit papers on the insurer, but rather state that the insurer is not "bound" by the judgment. *See Hendricks v. U.S. Fidelity and Guaranty Co.*, 5 N.C. App. 181, 183-84, 167 S.E. 2d 876, 878 (1969) (insurer shall be bound by a final judgment against the uninsured motorist in certain situations). The provisions contemplate a situation where an insured has taken a final judgment against an uninsured or underinsured motorist, but has not lost his right to claim coverage under the UIM or UM policy provisions. *See Rampy v. State Farm Mut. Auto Ins. Co.*, 278 So. 2d 428, 435 (Miss. 1973) (failure to send copy of process of suit against uninsured motorist to insurer does not forfeit right to sue insurer for benefits unless judgment obtained against uninsured motorist used as basis of suit against insurer). Therefore, when the insured fails to comply with Section 20-279.21(b)(3), it may not use the previous judgment against the underinsured motorist as *res judicata* on the issue of liability or damages in a later action against its underinsurance carrier.

In any event, plaintiff does not seek to use the previous judgment against the Bells as *res judicata* on the issue of liability or damages in its action against Horace Mann and therefore does not contend that Horace Mann is "bound" by the previous judgment. Therefore, in its action against Horace Mann on remand, plaintiff must prove the liability of the tortfeasor as well as the amount of damages. *Cf. Brown*, 285 N.C. at 319, 204 S.E. 2d at 834 (action against uninsured motorist carrier is "actually one for the tort allegedly committed by the uninsured motorist"). In plaintiff's action against Horace Mann, Horace Mann may raise any defenses originally available to the tortfeasor in order to show the insured was not legally entitled to recover damages from the tortfeasor.

For the reasons above, the trial court's entry of summary judgment is reversed as to defendants Horace Mann and Matthews and this case is remanded for proceedings on plaintiff's claims for underinsurance benefits, negligence, bad faith, fraud, and unfair and deceptive trade practices. The summary judgment for the Bells is affirmed.

Affirmed in part, reversed in part and remanded.

Judges BECTON and PHILLIPS concur.