IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-157

Filed: 21 January 2020

Moore County, No. 17 CVS 1328

TODD E. MANESS, Petitioner,

v.

THE VILLAGE OF PINEHURST, NORTH CAROLINA, Employer, and NORTH CAROLINA DEPARTMENT OF COMMERCE, DIVISION OF EMPLOYMENT SECURITY, Respondents.

Appeal by petitioner from order entered 27 August 2018 by Judge Thomas H. Lock in Moore County Superior Court. Heard in the Court of Appeals 16 October 2019.

> *The McGuinness Law Firm, by J. Michael McGuinness, for petitioner-appellant.*
>
> *Van Camp, Meacham & Newman, PLLC, by Michael J. Newman, for respondent-appellee The Village of Pinehurst.*
>
> *North Carolina Department of Commerce, Division of Employment Security Legal Services Section, by Regina S. Adams and R. Glen Peterson, for respondent-appellee North Carolina Department of Commerce Division of Employment Security.*

DIETZ, Judge.

Under our State's unemployment benefits program, an employee is not entitled to benefits if she quit or resigned—or, more specifically, if she "left work for a reason other than good cause attributable to the employer." N.C. Gen. Stat. § 96-14.5.

Todd Maness, a long-serving law enforcement officer and the petitioner in this unemployment case, knowingly disobeyed an order from his superiors. He did so because he was unwilling to disclose his personal medical history to an outside company hired by the police department to conduct medical screenings of its officers. Knowing that his refusal would result in immediate disciplinary suspension, Maness told his superiors that he would not comply, turned in his badge, and went home.

The Employment Security Division's Board of Review found that Maness did not intend to quit and instead turned in his badge because he believed he was suspended. But the Board also found that Maness's superiors within the police department believed that Maness had resigned. The Board of Review then found that Maness "left work for a reason other than good cause attributable to the employer" and was not entitled to unemployment benefits. The trial court affirmed the Board of Review's ruling.

We reverse the trial court's order and remand this case with instructions for the trial court to vacate the Board of Review's decision and remand for additional findings. When an employee's statements or actions are equivocal, the question of whether the employee "left work" must be decided objectively, by examining whether a reasonable person under the circumstances would have viewed the employee's actions as quitting or resigning. The Board of Review did not make the necessary

findings under this standard and therefore this matter should be remanded to the Board for additional findings.

## Facts and Procedural History

Petitioner Todd Maness worked for more than ten years as a law enforcement officer for the Village of Pinehurst. In late March 2017, Pinehurst's Chief of Police directed all officers to submit to mandatory urine and blood screenings. The screenings were to take place on 19 April 2017.

SiteMed, the private firm hired by Pinehurst to administer the screenings, required anyone submitting to the screening to complete a medical history form that requested detailed, personal medical history.

Maness was not scheduled to work on the day of the screenings. Before his screening, he came to the workplace and met with his superiors, including the Chief of Police. He explained that he was concerned about disclosing his personal medical information to a private company like SiteMed. He asked for permission to use his personal physician to conduct the screening instead.

The Chief of Police rejected this request and told Maness that all personal information disclosed to SiteMed would "remain confidential." Maness decided that he would not disclose his personal medical information on the screening form and, as a result, would not be screened by SiteMed along with his fellow officers that day. Because Maness knew that an officer's refusal to follow his superiors' commands

resulted in immediate disciplinary suspension, Maness, "on his own accord, concluded that he was on a disciplinary suspension which required him to turn in his badge and credentials." He turned in his badge and credentials to his superiors, stated "that he was 'done' and was going home," and then left the workplace.

Shortly after leaving work, Maness sent a text message to the Chief of Police "inquiring of possible disciplinary action for his refusal to comply with the required health screening." The Chief of Police did not respond because "the matter had been reported to human resources and human resources would make the decision regarding [Maness's] employment."

Maness was scheduled to report for duty two days after the screening day. But the day after the screening, on 20 April 2017, someone in "human resources" contacted Maness and told him that "he should take compensatory time or vacation time and not report to work." Maness later met again with the Chief of Police, who told Maness that the police department had determined that Maness quit his job and thus was no longer employed as an officer there.

On 4 June 2017, Maness filed a claim for unemployment compensation benefits and the claim made its way through the administrative process in the Employment Security Division of the North Carolina Department of Commerce. Following a hearing, an Appeals Referee ruled that Maness "is not disqualified for unemployment

benefits." Pinehurst appealed that decision to the Employment Security Division's Board of Review.

On 13 November 2017, the Board of Review reversed the decision of the Appeals Referee and ruled that Maness is disqualified from receiving unemployment benefits because he "left work without good cause attributable to the employer." Maness then petitioned for judicial review in Superior Court. Following a hearing, the trial court entered an order affirming the Board of Review's decision. Maness timely appealed to this Court.

## Analysis

Maness challenges the determination by the Board of Review that he is ineligible for unemployment benefits. The standard of review in appeals from the Board of Review, both to the superior court and to this Court, is whether competent evidence supports the findings of fact, and whether those findings, in turn, support the conclusions of law. N.C. Gen. Stat. § 96-15(i); *In re Enoch*, 36 N.C. App. 255, 256–57, 243 S.E.2d 388, 389–90 (1978). "[I]n no event may the reviewing court consider the evidence for the purpose of finding the facts for itself. If the findings of fact made by [the Board of Review], even though supported by competent evidence in the record, are insufficient to enable the court to determine the rights of the parties upon the matters in controversy, the proceeding should be remanded to the end that [the

Board] made proper findings." *In re Bolden*, 47 N.C. App. 468, 471, 267 S.E.2d 397, 399 (1980) (citations omitted).

Under N.C. Gen. Stat. § 96-14.5(a), "[a]n individual . . . is disqualified from receiving benefits if the Division determines that the individual left work for a reason other than good cause attributable to the employer." This Court has long held that the term "left work" in this context means the employee "quit his job," as opposed to being fired by the employer. *In re Clark*, 47 N.C. App. 166, 166, 266 S.E.2d 854, 856 (1980). But no previous case squarely addresses the question presented here: when an employee's statements or actions are equivocal, how does one determine if the employee actually "left work"?

Maness argues that, when examining whether an employee has left work, "it is the employee's intent that governs." Thus, Maness argues, an employee cannot leave work unless the decision to do so was a knowing and voluntary one.

Respondents, by contrast, argue that the decision is, in effect, a unilateral one by the employer. In their view, what matters is whether the employer *perceived* the employee's conduct or statements as a resignation, not what the employee actually intended.

Both of these proposed standards are flawed. With either approach, the determination turns on the *subjective* viewpoint of either the employer or employee. This runs counter to the general principle that, unless the General Assembly states

otherwise, a factual determination is made objectively, not subjectively. *See, e.g.*, *Walker v. North Carolina Coastal Resources Comm'n*, 124 N.C. App. 1, 5–6, 476 S.E.2d 138, 141 (1996); *Silvers v. Horace Mann Ins. Co.*, 90 N.C. App. 1, 8, 367 S.E.2d 372, 376 (1988).

Consistent with this principle, we hold that when there is a fact dispute concerning whether an employee's statements or conduct amounted to "leaving work" under the statute, the dispute must be resolved by determining whether a reasonable person would have believed the employee left work.

Applying that standard here, we must remand this matter for further findings by the Board of Review. The Board found that, when Maness turned in his badge and credentials and stated he was "done," Maness did not intend to quit his job, but instead believed he was suspended from active duty:

> As a sergeant and due to his knowledge and experience in the department, claimant was aware of the employer's procedure that he would be subjected to disciplinary suspension for his failure to obey an order of his superior. *Claimant, on his own accord, concluded that he was on a disciplinary suspension which required him to turn in his badge and credentials.* (Emphasis added).

The Board also found that, when Maness turned in his badge and credentials and stated he was "done," his employer subjectively believed that he had quit his job:

> After claimant left the worksite, Chief Phipps and Deputy Chief Gooch concluded that the claimant had quit work and they subsequently informed Angela Kantor, human resources director, regarding the matter.

In its final finding of fact, the Board then found that Maness "left work and was not discharged by the employer." But the Board did not state that it made this finding by applying a reasonable person standard. In its evidentiary findings, the Board made two conflicting, subjective findings—that Maness did not believe he had left work and that his employer believed he did.

The Board also made a number of evidentiary findings that conflict with its ultimate finding. For example, the Board found that Maness texted the Chief of Police shortly after turning in his badge and credentials to inquire about what disciplinary action he would receive—an act inconsistent with having quit. Likewise, the Board found that, the day after Maness turned in his badge and credentials, a human resources employee told him that "he should take compensatory time or vacation time and not report to work" as scheduled. Taking compensatory or vacation time instead of reporting for work would be unnecessary if Maness already had resigned and no longer worked there.

Accordingly, we reverse the trial court's order affirming the Board of Review and remand with instructions for the trial court to vacate the Board of Review's decision and remand this matter to the Board for further fact finding concerning whether, based on its existing findings, a reasonable person would have interpreted Maness's actions as having "left work." The Board of Review may, in its discretion, enter a new decision on the existing record or conduct any further proceedings it

deems necessary to make the findings required by our holding. *See* N.C. Gen. Stat. § 96-15.

We decline to address Maness's remaining legal challenges, which may be mooted by the Board's decision on remand.

## Conclusion

We reverse the trial court's order and remand for the trial court to vacate the Board of Review's decision and remand this matter to the Board of Review for further proceedings.

REVERSED AND REMANDED.

Judges INMAN and YOUNG concur.